## Bacon's Estate.

|  |  |
|---|---|
| 202 | 535 |
| e209 | 219 |
| e209 | 221 |

*Deed—Life estate—Issue—Cross remainder—Trust and trustees.*

An uncle created by deed a trust for his five nieces for life, with remainder " in trust as to one equal fifth part of said estate hereby conveyed for the use of any issue which said niece may leave, if more than one in equal shares in fee simple, and if any one of my said nieces shall die without issue, then the share of the one so dying shall go to her surviving sisters or sister respectively that is, the daughters of D. shall be entitled to receive the share of one of their sisters so dying without issue, and the daughter of T. shall be entitled to receive the share of her sister so dying without issue, but the same shall still be held by the trustees above named upon the same trusts as are above set out and hereinafter provided for." The three nieces, daughters of D., subsequently died, two leaving issue surviving, and the third dying without issue. The two daughters of T. died leaving no issue. *Held* (1) that the nieces should have but life estates; (2) that their issue should take in fee; (3) that the grant should be kept within family lines, that is, that the shares of the daughters of T. and their issue should be kept separate and distinct from the shares of the daughters of D. and their issue, and there should be cross remainders within but not without the family lines; (4) that if there

were issue within the family lines, that issue should take to the exclusion of everybody else, though their parent had died before her sister who had left no issue; (5) that the share of the daughter of D., who died without issue, should go to the issue of her deceased sisters; (6) that the two fifths in which the daughters of T. had a life interest should go to the heirs of the grantor under the intestate laws.

Argued Jan. 9, 1902.    Appeals, Nos. 207, 208, 209, 210 and 211, Jan. T., 1901, by George B. Hancock, Henry J. Hancock, Walter W. Hancock and George B. Hancock, Guardian of Jean B. P. G. Hancock, and George W. Hancock, Amos W. Bacon, Thomas P. Bacon and William F. McCoy, executors of Sarah W. Bacon, deceased, and Henry W. Watson, from decree of C. P. No. 2, Phila. Co., Sept. T., 1899, No. 149, dismissing exceptions to auditor's report in the matter of the trust estate under the deed of Charles W. Bacon.    Before McCOLLUM, C. J., MITCHELL, DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Exceptions to report of Alex. Simpson, Esq., auditor.

The material portions of the report were as follows :

1. Charles W. Bacon, the grantor in the deed of trust, never had been married.  He had certain nephews and nieces who were his next of kin.  In 1858, he determined to distribute a portion of his estate to them or for their benefit.  To each of his nephews he gave $10,000, absolutely, either in cash or securities, or in the cancellation of an indebtedness.  For the benefit of his five nieces and their issue, he conveyed real estate supposed to be then worth $50,000, in trust, as hereinafter set forth.

2. On September 30, 1858, the said Charles W. Bacon, made, executed and delivered a deed to trustees containing the following provision : "In Trust nevertheless to let and demise the same and collect and receive the rents issues and profits thereof and after deducting the taxes, repairs and the necessary expenses of this trust, to pay over half yearly the sum of Six hundred dollars per annum (if the income of said property will realize said sum and if not then so much thereof as the same will produce ratably and in proportion) to the sole and separate use of each of my five nieces viz. Susan P. Hancock wife of Joseph L. Hancock, Mary Bacon, and Anna B.

Watson wife of Mitchell Watson, the three daughters of my late brother David Bacon, deceased, and Sarah W. Bacon and Mary S. Bacon the two daughters of my late brother Thomas Bacon, deceased, upon each of their separate and exclusive receipts therefor and free from the debts contracts or control of either of their respective husbands, for and during the term of the natural life of each of my said five nieces and from and after the decease of any one of my said nieces then In Trust as to one equal fifth part of the said estate hereby conveyed for the use of any issue which said niece may leave if more than one in equal shares in fee simple and if any one of my said nieces should die without issue then the share of the one so dying shall go to her surviving sister or sisters respectively, that is, the daughters of David Bacon shall be entitled to receive the share of one of their sisters so dying without issue, and the daughter of Thomas Bacon shall be entitled to the share of her sister so dying without issue, but the same still to be held by the trustees above named upon the same trusts as are above set out and hereinafter provided for. Provided however should the net income of the estate hereby conveyed, after paying the taxes, repairs and expenses above recited, be more than sufficient to pay each of my said nieces the said yearly sum of Six hundred Dollars then it shall and may be lawful for the said Trustees or the survivors or survivor of them in their or his sole exclusive and absolute discretion and without responsibility therefor, either to allow such excess to accumulate in their hands during the lives of my said nieces and the same to go with the principal estate as above provided ; or to expend and use the same in making improvements or extraordinary repairs upon the said estate hereby conveyed, or to divide the said excess or any part thereof in equal fifth parts among my said nieces, it being the intention hereby to vest in the said Trustees and the survivors and survivor of them the fullest and amplest discretion in these respects and without their being considered accountable therefor. Provided however that it shall and may be lawful for said Trustees and the survivors and survivor of them and the heirs and assigns of such survivor at any time hereafter to grant bargain sell and convey the estate and premises hereby conveyed or any part thereof to any purchaser thereof in fee simple or for any less estate and to make and de-

liver all deeds necessary for the proper conveyance thereof, freed, cleared and discharged of all trusts and without liability on the part of the purchaser to see to the application of the purchase money, and the proceeds of such sales to invest in safe securities upon the same trusts as are above set forth and declared."

3. The three nieces, who were daughters of David Bacon, died as .follows :

Susan P. Hancock died March 19, 1878, leaving issue, many of whom still survive.   Anna B. Watson died September 6, 1885, leaving a son who still survives.  Mary Bacon died December 17, 1898, unmarried and leaving no issue.   And aside from the distribution to the issue of Susan P. Hancock and Anna B. Watson, whose rights are undisputed, the questions now raised are : Did the one-fifth share of which Mary Bacon received the income go to the heirs and assigns of the last surviving trustee, or did it revert to the donor's estate, or did it vest in the issue of her sisters, Susan P. Hancock and Anna B. Watson, and if it did so vest, did they take per stirpes or per capita ?

4. The two nieces who were daughters of Thomas Bacon died as follows :

Mary S. Bacon died September 5, 1886, unmarried and leaving no issue ; and Sarah W. Bacon died July 3, 1899, unmarried and leaving no issue.

On the death of the former the income of her share was to be paid to and was paid to her surviving sister for life, and the questions now raised as to those two fifths are : Did they go to the heirs and assigns of the last surviving trustee, or did they revert to the donor's estate, or did they vest in the issue of Susan P. Hancock and Anna B. Watson, and if they did so vest, do those issue take per stirpes or per capita ?

In the findings of facts thus necessary to the consideration of the questions raised, the auditor has purposely avoided stating the names of the issue of Susan P. Hancock and Anna B. Watson, because to state them would only obscure the questions at issue.

The inquiry as to whether or not these several shares or any of them belonged to the estate of the last surviving trustee is set at rest by the decision in Lessee of Huston v. Hamilton, 2

Binn. 387, where it is held that where an estate is conveyed in trust to serve certain uses, a resulting trust arises, by implication of law, to the grantor, for all such parts of the equitable estate as are not disposed of by the deed.   That decision seems never to have been doubted thereafter.

The primary question, therefore, is, did the three-fifths interests above referred to revert to the estate of the donor because of the death of the three life tenants without leaving issue, or did they vest in the issue of the other life tenants?

The first contention made touching this point grows out of the first finding of fact above set forth.   It was urged that because the donor at the same time gave $10,000 absolutely to each of his nephews, that it must have been his intent that the properties conveyed by this deed—aggregating in value as they did the same relative amount for the five nieces—should go to them and their issue to the exclusion of the nephews thus already provided for, who were his other heirs.   This presupposes an intent to place all his heirs upon an equality.   But the execution of this deed negatives that supposition.   Had that been the intent the deed of trust would never have been made.   Had there been an ulterior intent that the inequality which he thus made was not to extend beyond the life of the nieces named, it would have been easy to say so, but it was not said.   Such a supposition is the purest speculation, for the attempt thereby to place the issue of the nephews and nieces on an equality requires not only that the donor should know that the nephews would retain the money paid them and bequeath it to their issue, but that relatively the same number of nephews and nieces should die without issue.   It is unquesably true that the circumstances existing at the time of execution are always pertinent to be considered in construing any writing: Postlethwaite's Appeal, 68 Pa. 478; Follweiler's Appeal, 102 Pa. 581; Seybert v. Hibbert, 5 Pa. Superior Ct. 537. But that rule has no relevancy when attempted to be applied to possibilities as yet resting in the womb of time.   The auditor therefore holds that the fact that the nephews of the donor each received $10,000 in cash does not aid in interpreting the deed now under consideration, though the fact that it was a family settlement is a matter to be considered.

Nor, assuming that there is no gift over in the event of one

of the life tenants dying without issue and without leaving a sister her surviving, can the auditor hold that the gift of the income carries with it a gift of the corpus. It is undoubtedly true that an unqualified gift of the income of land with no remainder over is to be taken as a gift of the land itself, for so it is presumed the intent of the grantor is: Beilstein v. Beilstein, 194 Pa. 152; Seybert v. Hibbert, 5 Pa. Superior Ct. 537.

But where it is the manifest intent to sever the product from its source, a gift of the income will not carry an estate in the principal: Bentley v. Kauffman, 86 Pa. 99; and where the gift is qualified by a direction to or power in some one else to sell, the gift must be confined to the income alone, for the intent to keep the two things separate and distinct is thus made manifest: Kline's Appeal, 117 Pa. 139; Livezey's Appeal, 106 Pa. 201; Lightner's Appeal, 11 W. N. C. 181; and this is true though there be no specific limitation over: Shissler's Appeal, 148 Pa. 577; and where as here by the terms of the grant the first taker's right is expressly limited to a life estate, it makes no difference that the principal does not sink into the residue, or that testator died intestate as to it, unless it clearly appears by other parts of the will that the intent was to give an absolute interest: Seiber's App., 9 Atl. Repr. 863; Sheaffer's Appeal, 8 Pa. 38.

In the present case there was not even a grant of all the income. There was a grant to each niece of $600 per annum should the income be sufficient to pay it, and the excess, if any, at the discretion of the trustees was to be divided, to be accumulated for final division among the remainder-men, or to be used in betterments. And in addition there was a power of sale in the trustees. The auditor can find no intent to give the principal in thus giving part of the income, but on the contrary finds a clear intent to keep them separate and distinct.

Nor is there an estate tail, which under the Act of April 27, 1855, P. L. 368, is enlarged to a fee. Were the grant here to the nieces direct, with remainder to the heirs of their body, an estate tail would result: Lapsley v. Lapsley, 9 Pa. 130; Hackney v. Tracy, 137 Pa. 53; Smith's Appeal, 23 Pa. 9; Middlesworth v. Blackmore, 74 Pa. 414; 1 Sharswood & Budd's Leading Cases, 98.

Here, however, the grant is not to the nieces at all, but to

certain trustees upon an active trust, to protect as well those
in remainder, so that the life estate being equitable and the
remainder estate legal, the two do not coalesce and the life
estates are not enlarged: Bacon's Appeal, 57 Pa. 504; Hile-
man v. Bouslaugh, 13 Pa. 344.

As in many other matters a clear definition of the estate, and
a statement of the facts alleged to show its existence, will best
determine whether it does here exist. The definition of an
estate tail generally accepted is that given in 1 Cruise, 78, viz:

"An estate tail may be described to be an estate of inherit-
ance deriving its existence from the statute de donis condi-
tionalibus, which is descendible to some particular heirs of the
person to whom it is granted, and not to the heirs general."

It differs from a fee only in the fact that the limitation in the
one case is to the heirs generally, and in the other to the heirs
of the body, general or special, by apt words restricting the in-
heritance. Prior to the statute de donis the tenant in fee tail
could alien on birth of issue as freely as an owner in fee simple.
The 1st section of that statute (13 Edw. 1, c. 1) ordained that
"the will of the donor according to the form of the deed of gift
manifestly expressed, be henceforth observed; so that to whom
a tenement is given under such condition shall have no power
to alien the tenement so given, but that it shall remain unto
the issue of them to whom it was given after their death, or
shall revert to the donor or his heirs, if issue fail or there is no
issue at all."

How then can there be here an estate tail when there was no
grant to any one as tenant in tail, but a grant to trustees upon an
active trust to preserve the remainders. And the last vestige
of an argument touching this phase of the matter seems gone
when we remember the fact already pointed out that the nieces
do not even get all the income of the property. If that income
exceeded $3,000 per annum, the balance might or might not go
to them, the trustees having "the fullest and amplest discre-
tion in these respects, and without being considered account-
able therefor."

Moreover, while a wide latitude is exercised in construing a
will for the purpose of determining whether the words in fact
used are equivalent to the technical words "heirs of the body"
necessary to constitute an estate tail, and this on the presump-

tion that the testament was drawn by those unacquainted with legal rules, precisely the converse presumption exists in the case of a deed. It is said in Elphinstone on the Interpretation of Deeds, rule 127: "The word issue in a deed always is a word of purchase." And in 2 Blackstone's Commentaries, 115: "A grant to a man and the issue of his body gives him but a life estate." And in Taylor v. Taylor, 63 Pa. 481: "Heirs of the body" are proper technical words of limitation, "issue" is not when used in a deed. And as it is later said in the same case when the word used is not a word of limitation "that it shall enlarge an express estate for life into an estate tail, seems opposed alike to reason and authority." To the same effect is Wells v. Ritter, 3 Wh. 217. It is legally inconceivable that an estate tail can exist: (a) where the grant is not to the tenant in tail, but to trustees upon an active trust; and (b) where the tenant in tail only has a portion of the income of the land for life; and (c) where the remainder-men take by purchase and not by limitation.

It will be noticed that the conclusion thus reached is entirely aside from the inquiry as to whether the word "issue" as here used means a definite or an indefinite failure of issue, and whether the trust is for coverture or otherwise. It is clear, however, that to support the remainder over the trust will be sustained whether or not the nieces were then married or in contemplation of marriage: Williams's Appeals, 83 Pa. 377; Ingersoll's Appeal, 86 Pa. 240; Kuntzleman's Estate, 136 Pa. 142.

If it be true, as now claimed, that at the time the deed was made none of these nieces were either married or in contemplation of marriage, then it may be said, as was aptly said in Kuntzleman's Estate, 21 W. N. C. 567, the primary purpose of creating the trust must have been other than protection against the control of or debts of future husbands, and hence the trust being active will be sustained to support the remainders, which were in fact the primary purpose to be conserved in creating the trust.

The auditor can find no substantial basis for the contention that the nieces took a fee tail under the deed, and therefore overrules that contention.

The real inquiry then is: What is the true construction of

this deed, it being part of a family settlement by the grantor? It was at first suggested that in construing a deed, unlike construing a will, the intention of the grantor was of no moment. But clearly the law is not so. In deeds as in wills alike, aside from the necessity for words of limitation to pass a fee, the primary inquiry is, what was the intent? Phillips's Appeal, 93 Pa. 50; Berridge v. Glassey, 112 Pa. 442; Mergenthaler's Appeal, 15 W. N. C. 441; Huss v. Stephens, 51 Pa. 282; Criswell v. Grumbling, 107 Pa. 409; Schlegel v. Herbein, 174 Pa. 508.

And this is particularly true of a deed of trust such as this, which in some of its legal aspects is the same as and is treated the same as a will: Lessee of Huston v. Hamilton, 2 Binn. 386; Ivory v. Burns, 56 Pa. 300; Cole v. Sewell, 2 House of Lord's Cases, 186.

No question as to the words of inheritance arising, we turn at once to the deed to find its meaning, and it must be admitted that the first thought is that a contingency has happened for which no provision is made. The trust is for the nieces for life with remainder " in trust as to one equal fifth part of the said estate hereby conveyed for the use of any issue which said niece may leave, if more than one in equal shares in fee simple, and if any one of my said nieces shall die without issue, then the share of the one so dying shall go to her surviving sisters or sister respectively, that is, the daughters of David Bacon shall be entitled to receive the share of one of their sisters so dying without issue, and the daughter of Thomas Bacon shall be entitled to receive the share of her sister so dying without issue, but the same shall still be held by the trustees above named upon the same trusts as we are above set out and hereinafter provided for."

When Mary Bacon died leaving no issue, both her sisters were dead, and hence there could be no remainder over to her issue or her sisters. Those sisters, however, left issue which then and now survive, and unless the strict language of the provision, aside from the clear intent of the grantor, is to govern their issue may take. In construing an instrument of this kind quite as much care is to be taken to avoid " sticking in the bark " as to avoid making a grant for the donor Qui hæret in litera hæret in cortice, the investigation requiring that we

shall seek and carry into effect the general intent, where it does not offend against any legal principle.

It seems clear to the auditor that the donor had in his mind several general intents.

1. That the nieces should have but life estates.

2. That their issue should take in fee.

3. That the grant should be kept within the family lines, i. e., that the shares of the daughters of Thomas Bacon and their issue should be kept separate and distinct from the shares of the daughters of David Bacon and their issue, there should be cross remainders within but not without the family lines.

4. That if there were issue within the family lines those issue should take to the exclusion of everybody else, though their parent had died before her sister who left no issue.

It will be noticed at once that upon the face of the deed there is no suggestion of the possibility of a reversion, nor is there anything appearing, nor any reason imaginable, why the right of the issue to take should depend on the contingency of their parent surviving a minute or a decade after the sister leaving no issue. It would, of course, be possible for a grantor to so provide, but in the absence of a provision no such intent can be presumed.

It is suggested in one of the briefs submitted that the remainder over to a surviving sister in case of a death without issue, means a gift to the survivor for life without remainder, as to that portion, to the issue of such survivor. The auditor does not so read the deed. It says: "If any one of my said nieces should die without issue then the share of the one so dying shall go to her surviving sister or sisters respectively. . . . . But the same still to be held by the trustees above named upon the same trusts as are above set out and hereinafter provided for." That is, as the auditor understands it, to pay the $600 per annum to such surviving sister or sisters for life " and from and after the decease of any one of my said nieces then in trust as to one equal fifth part of the said estate hereby conveyed for the use of any issue which said niece may leave if more than one in equal shares in fee simple." Any other conclusion convicts the grantor of having provided for the contingency of a niece dying without issue only to the extent of a life estate, without providing for a reversion to himself or

anyone else should the contingency happen for which he provided. And it limits the words, " upon the same trusts " not to trusts at all but to a single trust, i. e., to pay the designated portion of the income to the survivor for life.

Turning to the authorities bearing upon the real question at issue, we find that while they are not altogether harmonious the great weight of authority is with the views heretofore expressed.

In Lessee of Huston v. Hamilton, 2 Binn. 386, a husband and wife conveyed property of the wife in trust for their joint use, if the wife survived, then in trust for her and her heirs forever, if the wife died first without issue then in trust for the husband in fee, but if the wife died first leaving issue, then in trust for the husband for life, remainder to their children surviving the death of the husband. The wife died first leaving a child, who died thirteen days later, the husband surviving. It was claimed for the husband that the remainder being to the children who survived the death of the husband, showed that the prior clause should be read that if the wife died first without leaving issue, which survived the death of the husband, that the latter should take a fee. It was held that he took a life estate only, and the basis of the opinion was that the land being the wife's at the time of the grant. the husband must show a clear title if he wished to deprive her heirs thereof. Upon the question now raised the case is of little weight.

In Lapsley v. Lapsley, 9 Pa. 130, testator by will gave certain realty to his four sons for life, but " if any of my sons should die without issue, their part or portion shall be divided between the surviving brothers." This case was decided in 1848, and though an estate tail resulted it was not statutorily enlarged to a fee, and the entail was not barred. The facts bearing upon the present contention were that one son died leaving issue, then another son died leaving no issue, and the inquiry was, did the issue of the son dying first take with " the surviving brothers." It was held that they did, " because the law would impute an intent not to disinherit the issue of those who had fulfilled the principal condition annexed to the gift. The word 'survivors' is in such cases held to mean others."

And the court quotes with approval from 2 Powell on Devises, 723, the following:

"If property be given to several persons, with a proviso that in case of the death of any without leaving children at their death, their shares shall go to the survivors, but in case of the death of any leaving children, then their shares shall belong to such children; if one of the devisees shall die leaving issue, and then another die not leaving children, the share of the latter will go as well to the surviving objects as to the children of the deceased objects, and by a parity of reasoning, if all the legatees were then dead, leaving children, so that there were in fact no survivors, the children would take the whole."

The auditor cannot find that this case has ever been qualified, much less overruled, in this state, and it seems to rule the present question. It was suggested that a distinction existed between that and the present, because there there were survivors in fact while here there were not. That very contingency, however, is provided for in the extract from Powell on Devises, and so far as a distinction exists it tells against the claim made in antagonism, for surely if technically there are some existing who fulfill the designation, their right is more likely to be sustained than in cases where there are none who technically fulfil the designation, but resort must be had to an implication of law to carry the estate over to objects not named by the donor.

In Ivory v. Burns, 56 Pa. 300, a grantor, in consideration of $1.00 and natural love and affection, conveyed lands to his two sons-in-law, their heirs and assigns, to be equally divided between them. Between the attestation and receipt clauses of the deed was written the following:

"N. B.—D. Burns's half to be for the use of Mary Ann Burns after the decease of her parents, and A. Neely's half to be for the use of Elizabeth Neely after the decease of her parents."

Elizabeth Burns, the mother, died, and then Mary Ann Burns died, leaving no issue. It was held that D. Burns took a fee simple in one half of the premises in trust for himself and his wife for life, with remainder at their death to his daughter Mary Ann Burns, if surviving. The court said:

"The language of the nota bene clause contains no words of inheritance, so that the estate vested by the trust in Mary Ann is a matter of construction only. In limitations of trusts, either

of real or personal estates, it is said that the construction, generally speaking, is the same as in like limitations of legal estates, though with much greater deference to the manifest intent; and further, that though equity follow the law and applies the doctrines applicable to legal estates to trusts, yet a court of equity does not hold itself strictly bound by the technical rules of law, but takes a wider range and more liberal view in favor of the intention of the parties. . . . "Clearly, here is evidence of an intended settlement of the grantor's property in each family respectively, without the slightest evidence of an intention that the estate should revert to himself on any contingency, or that it should go over from one family into the other. With this manifest intent on the part of the grantor, it would ill become a chancellor to supply words of inheritance to the trust for Mary Ann Burns, dying before her father, and thereby to withdraw the fee simple granted to her father, and carry it over on her death unto the other family as her next of kin and heirs at law."

In re Arnold's Trusts, L. R. 10 Eq. Cases, 252, Arnold devised his lands in trust for his children for life, with remainder to their children reaching twenty-one years of age or leaving issue, "but so nevertheless that the child or children of each of his children should take his, her or their own parent's share only ; and in case of a failure of such issue of either of his said children, then in trust for his other surviving children or child in like manner in all respects as their, his or her original shares or share were or was thereinbefore given."

One child died leaving issue, then another leaving no issue, and it was held that the issue of the former took a share in the part set aside for life for the latter.

In reference to the survivorship clause above it is said :

"It is quite clear that under that clause the accruing shares are given over in the same manner as the original shares, that is to say, to the children for life, with remainder to their children who attain twenty-one or leave issue.

"The question is, whether he did not intend that the accruing shares should go in the same way to those of his children who survived in themselves or their children. I think it is impossible to doubt that this was his intention."

This case overrules Milsom v. Awdry, 5 Vesey, 465, and, so

far as it is inconsistent, Corbett's Trusts, 1 Johns. Ch. Rep. 591, though in the latter as apt to the present inquiry, it is said:

" There are two classes of cases in which this construction has been adopted—one relating expressly to realty where there are limitations to members of a class for life, and then to their issue in tail, and in default of issue of any, over to the survivors or survivor. In such a case the words 'survivors or survivor' are almost of necessity construed 'others or other' on account of the extreme improbability of the testator contemplating the members of the original class as likely to be in existence at the time of an indefinite failure of issue of any of them."

The only criticisms of the decision in In re Arnold's Trusts, are that it was inconsistent with the principles of Cripps v. Wolcott, 4 Madd. Chancery, 12, and was the case of a devise and not a grant.

As to the first objection, it may be said that Cripps v. Wolcott has been repudiated in this state in a number of cases, notably, Johnson v. Morton, 10 Pa. 245, Ross v. Drake, 37 Pa. 373, and Sterling's Estate, 24 W. N. C. 495, and if it is inconsistent with Arnold's trusts it must fall, for Arnold's trusts is the later decision.

Cripps v. Wolcott simply decides that words of survivorship are to be referred to the period of division and enjoyment, unless there be a special intent to the contrary.

Judge PENROSE, in Sterling's Estate, with his usual vigor defends the Pennsylvania rule that those words are to be referred to the death of testator, and in Ross v. Drake, Judge STRONG aptly says that our rule " has at least these advantages that it corresponds with the usual presumptions in cases of doubt; that legacies and devises are vested, and that it prevents the dishersion of a testator's descendants by the unanticipated death of their immediate ancestor, between the death of the testator and the time fixed for the distributive enjoyment. To this may be added that it sometimes prevents the happening of an unforeseen contingency."

The objection that Arnold's trusts was the case of a will is at least met and overcome by the fact that Palmer's Settlement Trusts, L. R. 19 Eq. Cases, 320, Cross v. Maltby, L. R. 20 Eq. Cases, 378, and Cole v. Sewell, 2 H. of L. Cases, 186, deciding the same way on the same facts were cases of grants.

To same effect are Aiton v. Brooks, 7 Sim. 204, Wilmot v. Wilmot, 8 Vesey, 10, and Badger v. Gregory, L. R. 8 Eq. Cases, 78. In the latter case it is said:

" When, for instance, Blackacre is given to A for life remainder to his children, and Whiteacre to B for life remainder to his children, and in case either should die without children, then his acre to go to the survivor and his children, the presumption is almost conclusive that the word 'survivor' is put in contradistinction to 'the one so dying,' and means the one that does not die childless. . . . " If instead of this simple case the case be put of a testator giving his property to a class of children, with remainder to their descendants, and if any of them should die without descendants, then to the survivors and their descendants, the presumption that the word 'survivors' is used to mean 'others' is stronger, for it is scarcely possible to attribute to an ancestor the intention that the right of descendants in the second degree is to depend on the accident of whether their parents die first or second . . . . and by considering that the parent has survived in his descendants who have lived to acquire a vested interest."

And in Eyre v. Marsden, 4 Mylne & Craig, 231, the very point is put that any other construction would leave a portion of the estate undisposed of altogether, although all who had died had left issue. And it is said that the words " in the same manner " in continuing the trust to the survivors are laid hold of to carry the thought of a right in the issue of those who died first. In the present case the words " upon the same trusts " have precisely the same meaning.

It is urged, however, that even if the word " surviving " be read " others " in this trust, the matter is left unchanged, for the clause would then read " the share of the one so dying shall go to her other sister or sisters." But this is sticking in the bark. We are not here seeking to substitute one word for another, but to find the primary intent of the donor. That intent, when once found, in equity, in such cases as this, is always enforced. The words " surviving sister or sisters " are evidently intended only to segregate the families, not to members of the same family, and whether we say that those who left issue survive in their issue, or whether we say that the words " surviving sister or sisters " are used in contradistinction

to "sister so dying without issue," precisely the same result is reached. The trusts are to continue simply to preserve the rights of the nieces, and fall when the right vests in their issue.

It is not necessary, as was strenuously argued, to imply cross remainders here in order to sustain the conclusion reached. Cross remainders are in terms provided for, as was pointed out by Lord Chancellor COTTENHAM in Cole v. Sewell, 2 H. of L. Cases, 186, and the only question is, Is the precedent estate of a surviving sister necessary to effectuate the cross remainder to her issue? The auditor thinks not, but whether or not he be right in this, none the less cross remainders within the family lines are distinctly provided for.

So long as language is simply the means of, and oftimes a very imperfect human device for, conveying thought and intention, it will be useless to halt over the dictionary meaning of a single word; if upon taking every word in the instrument into consideration, and drawing conclusions therefrom, a result is reached which gives to some word or words a meaning other than normal, still must that result be accepted? So here the auditor thinks that upon the whole deed it was the intention of the donor that the issue of the other named daughters of his brother David should take if any such issue there were at the time of the death of any daughter of David leaving no issue. Hence, when Mary Bacon died on December 17, 1898, leaving no issue, her share vested in the issue of her sisters Susan P. Hancock and Anna B. Watson.

It remains to consider whether the share thus vesting passed to the issue per stirpes or per capita, i. e., whether all the issue take equal shares, or whether Susan P. Hancock's issue take one half and Anna B. Watson's the other. The auditor is not certain that he understands the basis of the contention that the issue take in equal shares. Had Mary Bacon died first, leaving no issue, than clearly under the trust deed one half of her share would have passed to Susan P. Hancock and one half to Anna B. Watson, with remainder to their issue respectively. The words " upon the same trusts as are above set forth " can have no other meaning. If, then, they do not have the same meaning, because Mary Bacon died last, then the accident of one or the other dying first has affected the grant, and the argument upon which is founded the right of

either set of issue to take must go for nothing. In none of the cases cited was the per capita claim ever urged, and if it were not in England surely it could not be here, where the per stirpes rule is the policy of our law. Taking by representation is with us the rule, and it is being extended and not contracted. It is never departed from unless the relationship is remote, and no reason appears here why it should be, but, on the contrary, the deed negatives such a thought. The auditor, therefore, decides that Susan P. Hancock's issue get one half and Anna B. Watson's issue get the other half of the Mary Bacon share.

It was argued also by Mr. Hancock that the grandchildren of Susan P. Hancock, whose issue take a one half share on the death of Mary Bacon, could not participate with the children of Susan P. Hancock. No reason was given for the assertion, and none is known to the auditor. Were this a devise by the donor to Mary Bacon for life, remainder to Susan P. Hancock for life, remainder to the issue of the latter, the same result would be reached either under the English or Pennsylvania rule, for all Susan P. Hancock's children survived her. The remainder in this deed is to the issue of Susan P. Hancock, and " the word issue occurring in a deed prima facie means descendants; but the context may show that it means children: " Elphinstone on the Interpretation of Deeds, rule 128; Ralph v. Carrick, L. R. 11 Ch. Div. 873.

In the present case there is nothing in the deed to show a meaning variant from the ordinary rule, and the auditor therefore holds that the grandchildren of Susan P. Hancock take with her children per stirpes.

The last inquiry in this connection is, Do the issue of Susan P. Hancock and Anna B. Watson take the shares of Mary S. Bacon and Sarah W. Bacon under the deed of trust? These latter ladies were children of the donor's brother Thomas, and Susan P. Hancock and Anna B. Watson were children of his brother David. In the auditor's opinion the accident that Mary S. Bacon and Sarah W. Bacon survived both Susan P. Hancock and Anna B. Watson plays no part in the consideration of this question. It seems clear, however, that the grantor studiously kept these family interests separate. He apparently seemed to think it improbable that both Mary S. Bacon and Sarah W. Bacon would die without leaving issue, but in no

contingency did he provide that the nieces who were daughters of his other brother, or their issue, should have any interest in these shares. The rights of the two families are just as distinct as if he had made two separate deeds one to each class, and in legal contemplation the effect is precisely the same. As was pointed out by Chief Justice TILGHMAN as long ago as Lessee of Hall v. Vandergrift, 3 Binn., 374, "the desire of confining property to a particular family seems deep-rooted in the human breast. From whence this passion springs, which delights in exercising a kind of dominion over property after death, it is unnecessary to inquire. But the fact is that we see it prevail in people of all conditions."

And doubtless this donor whose early life dated back to the eighteenth century felt that desire more than we who are further removed in point of time from the motives prevalent in the mother country. Be that as it may, however, this donor was careful to keep the family rights distinct.

For the reasons heretofore given, and following the ruling in Ivory v. Burns, 56 Pa. 300, McNeilledge v. Galbraith, 8 S. & R. 46, and Young's Appeal, 83 Pa. 59, the auditor rules that the issue of Susan P. Hancock and Anna B. Watson have no interest in those shares, but that under Lessee of Huston v. Hamilton, 2 Binn. 386, a resulting trust arises by implication of law in favor of the estate of Charles W. Bacon, the original grantor, and they must now be distributed as part of his estate.

The principles involved being thus outlined, the parties who are to take in accordance with those principles remain to be determined. And in so determining the auditor will consider first the distribution to those who claim under the deed of trust, and afterwards those whose title is derived by reason of the reversion to the estate of the donor.

Susan P. Hancock, one of the nieces named in the deed of trust, died March 19, 1878, leaving issue, and in those issue her one-fifth share vested. As already stated, however, it was not set apart to them. They consisted of Charles W. Hancock, George W. Hancock, Albert Hancock, Margaret B. Livezey and Mary A. Dixon.

Charles W. Hancock and George W. Hancock are still living.

Mary A. Dixon died December 20, 1886, leaving a husband, Charles A. Dixon, and two children, Edward C. Dixon and Susanna H. Lukens. By her will she gave one half of the estate to her son and the other half to her husband in trust for her daughter for life, with remainder to the children and issue of said daughter, if any, per stirpes, and in default thereof to her son or his children and issue per stirpes. Her husband elected to take against the will, and to have the share he was entitled to under the intestate law. The major part of the fund now to be distributed being the proceeds of realty, converted by the trustees under the power contained in the deed of trust, without any action on the part of the several cestui que trustent, and held by the trustees upon the same trusts as the realty, that part is in this its first transmission to be treated as realty. Hence as Mrs. Dixon was entitled to demand and receive the immediate possession thereof prior to her death, her husband is entitled to his tenancy by the curtesy (Chew v. Commissioners of Southwark, 5 Rawle, 160), which is an interest for life in one third thereof. And the other two thirds, together with the remainder in that third will be equally divided, one half going to Edward C. Dixon absolutely, and the other half to Charles A. Dixon, as trustee under the will as above set forth. In this case, as in all others in like situation, the auditor will make the award to the parties direct.

For reasons already stated this fund is now to be treated as real estate, and as no claim has been made against it by other than the distributees, and as the lien of debts not of record as against real estate expires at the expiration of two years, the auditor would, if necessary, treat two years after the death as the time within which the personal representatives have a standing to demand that payment be made to them. This is in keeping with the general practice even in cases of personalty: Walworth v. Abel, 52 Pa. 370; McLean v. Wade, 53 Pa. 146.

A fortiori it would be so in cases of realty. In the present proceeding, however, in every instance where a death occurred more than two years ago, the estate has been settled by the orphans' court, the debts paid and the distribution made to distributees, and in every such case, except that of Margaret Livezey, who died November 13, 1895, the deaths occurred more than nine years ago. Unnecessary delay and expense would

be the only result of awards to personal representatives in such cases.

Albert Hancock died February 14, 1891, leaving a wife, Josephine K. Hancock, and two children, Frank B. Hancock and Kate K. Hancock. By his will, probated at Philadelphia and registered in will book No. 155, p. 142, etc., he gave his whole estate to his said wife absolutely. She is, therefore, entitled out of this one-fifth share to receive one fifth thereof absolutely.

Margaret B. Livezey died November 12, 1895, intestate, without issue, leaving a husband, William Livezey, who still survives. Her collateral heirs are her brothers and sisters and nephews and nieces as above set forth. Her husband is, therefore, entitled to a one-half interest in her share for life; that one half in remainder, and the other one half presently, subject to the collateral inheritance tax, with simple interest from November 13, 1895, being distributable to the collateral heirs as stated.

The life estates growing out of the election of Charles A. Dixon to take against his wife's will, and of the death of Mrs. Livezey intestate, are of comparatively small sums, would require the husbands to enter security to protect the interests in remainder, and would require the remaindermen to enter security to protect the commonwealth in the payment of the collateral inheritance tax under section 1 of the Act of March 11, 1850, P. L. 170, and section 3 of the Act of May 6, 1887, P. L. 79. Under these circumstances the auditor is of opinion that the more sensible and equitable method of distribution would be to treat the life estate as equal to one third of the fund which would otherwise be held for life, and the remainder estate as equal to two thirds thereof. It is true that this method of calculation is at best but an arbitrary one, as are all attempts by the Carlisle Tables or otherwise to determine the duration of a given life: Kerrigan v. Penna. R. R. Co., 194 Pa. 98. Yet where, as here, the amount involved is small this rule will work substantial justice: Shippen & Robbins's Appeal, 80 Pa. 391; and in its application to this case enables a present and final distribution to be made of the whole fund. This method of valuation has accordingly been adopted by the auditor.

When, however, the income account is to be distributed, a

different table of distribution must be adopted. In that income Charles A. Dixon has an absolute interest of one third of his wife's share, and Mrs. Livezey, having left no lineal descendants, Mr. Livezey takes the whole of his wife's interest: Sec. 9, Act of March 11, 1848, P. L. 536.

Anna B. Watson, another of the nieces named in the deed of trust, died September 6, 1885, intestate, and leaving to survive her her husband, Mitchell Watson, and issue one son, Henry W. Watson, in whom her one-fifth share vested under that deed, though not set apart to him as above stated.

Mary Bacon, another of the nieces named in the deed, and the last of the daughters of David Bacon, died December 17, 1898, unmarried and leaving no issue. For the reasons above set forth the auditor is of opinion that this one-fifth share vested in the issue of her two sisters, Susan P. Hancock and Anna B. Watson, per stirpes, and as it vested in them by virtue of the deed no collateral inheritance tax is chargeable thereon. Prior to Mary Bacon's death both Mary A. Dixon and Margaret Livezey had died, and as they never had seisin or right of seisin to this share during their lifetimes, their husbands can have no claim thereupon: Hitner v. Ege, 23 Pa. 305; Williams v. Baker, 71 Pa. 476; Young v. McIntyre, 6 W. N. C. 252; Chew v. Commissioners of Southwark, 5 Rawle, 160.

The other two-fifths interests, as already decided, reverted to the estate of Charles W. Bacon, the original grantor in the deed of trust.

Exceptions were filed to the auditor's report. Two of the exceptions relating to the collateral tax were sustained, but the others were dismissed.

*Errors assigned* in the various appeals were in dismissing exceptions to auditor's report.

*John G. Johnson*, for George B. Hancock, Henry J. Hancock, Walter W. Hancock and George B. Hancock, guardian of Jean B. P. G. Hancock.

*Henry James Hancock*, for George W. Hancock.

*Joseph J. Broadhurst*, for Amos W. Bacon.

*William C. Hannis*, for Thomas P. Bacon and William F McCoy, executors of Sarah W. Bacon, deceased.

*W. S. Roney*, for Henry W. Watson.

PER CURIAM, May 19, 1902:

There are no less than five appeals by the executors and heirs from this decree confirming in the main the report of the auditor distributing the funds in the hands of the executors of Joseph Bacon, deceased, who was sole surviving trustee under deed of trust of Charles W. Bacon, deceased, said deed being dated September 30, 1858. The clause in the deed which is the cause of different and conflicting interpretations created a trust for his five nieces for life, with remainder "in trust as to one equal fifth part of said estate hereby conveyed, for the use of any issue which said niece may leave, if more than one in equal shares in fee simple, and if any one of my said nieces shall die without issue, then the share of the one so dying shall go to her surviving sisters or sister respectively, that is, the daughters of David Bacon shall be entitled to receive the share of one of their sisters so dying without issue, and the daughter of Thomas Bacon shall be entitled to receive the share of her sister so dying without issue, but the same shall still be held by the trustees above named upon the same trusts as are above set out and hereinafter provided for."

The three nieces, daughters of David Bacon are now dead as also the two nieces, daughters of Thomas Bacon. Susan L. Hancock died March 19, 1878, leaving issue who still survive ; Anna B. Watson died September 6, 1885, leaving a son who still survives ; Mary Bacon died December 17, 1898, unmarried and without issue. The two daughters of Thomas Bacon, Mary S. and Sarah W., died, the first, September 5, 1886, and the second, July 3, 1899, both unmarried, leaving no issue. What estate under a proper interpretation of the trust deed do the issue of the two sisters take ? It will be noticed, that from subsequent events, contingencies not foreseen, or not expressly provided for in the express words of the trust, must now be met by a proper interpretation of the deed to meet the facts. The learned auditor holds that the intent of the deed was :

1. That the nieces should have but life estates.

2. That their issue should take in fee.

3. That the grant should be kept within family lines, that is, that the shares of the daughters of Thomas Bacon and their issue should be kept separate and distinct from the shares of the daughters of David Bacon and their issue, and there should be cross remainders within but not without the family lines.

4. That if there were issue within the family lines, that issue should take to the exclusion of everybody else, though their parent had died before her sister who had left no issue.

Having interpreted the deed according to the intent of the grantor, the auditor decides, that the law as announced in Lapsley v. Lapsley, 9 Pa. 130, and cases closely following that decision applies and he makes distribution accordingly.

Although this court does not unanimously concur with all the views expressed by the learned auditor, nevertheless a decided majority agree with him in both his reasoning and conclusions. Anything we could say would be but a mere repetition of what he has so clearly and forcibly expressed. The court below sustained the first exception of Emily W. Bacon and others and the seventh exception of Henry W. Watson to the auditor's report, both alleging overcharging of collateral inheritance tax, and he modified his report accordingly. The decree of the court below is, therefore, affirmed on the report of the learned auditor for the reasons given by him and all the appeals are dismissed at costs of appellants in each appeal.