## Tyson's Estate.

484

*John W. Speckman*, for exceptions.

*John B. Gest* and *Frank Rogers Donahue* (of *Donahue, Irwin, Merritt & Gest*), contra.

LAMORELLE, P. J., Nov. 6, 1930.—Mary A. Tyson bequeathed the sum of $70,000 in trust to pay over the net income thereof to her husband's nephews and nieces, namely, Jonathan K. Tyson, Edward P. Tyson, Henry H. Tyson, Anna S. Tyson, Fannie L. Williams and George Williams, "for and during all the term of their respective natural lives. . . . And upon the decease of either of said Nephews or Nieces, I give, devise and bequeath the one-sixth part of the principal of this trust unto his or her children then living and the issue of any who may then be deceased," *per stirpes*, "in equal shares and parts, their heirs, executors, administrators and assigns forever. And in the event of the decease of either of said Nephews or Nieces, without leaving issue living at the time of his or her death, the share of the Niece or Nephew so dying, I direct my Executors to hold in trust for the survivors of said Nephews and Nieces for life, with remainder to their issue, such issue taking together their parent's share absolutely. . . ." The residue of the estate was given upon a similar trust for certain other persons.

Three of the nephews, namely, Jonathan K. Tyson, Henry H. Tyson and George Williams, died. Each left issue, and there was awarded to the respective issue each one-sixth of the principal of the estate. The other three *cestui que trusts* died subsequently without issue. The survivor was Edward P. Tyson.

The Auditing Judge awarded one-half of the original trust fund to the issue of the three nephews *per stirpes*.

It is contended by counsel for the exceptants that the word "their," occurring in the phrase, "with remainder to their issue," refers to the issue of surviving *cestui que trusts;* and as the three surviving *cestui que trusts* left no issue, that one-half of the original trust fund falls into the residue.

It is clear that the word "survivors," occurring in the phrase, "for the survivors of said Nephews and Nieces for life, with remainder to their issue," was not used in the sense of "others," for if that were true, then the court, when the fourth *cestui que trust* died without issue, should have awarded one-sixth of the principal of the trust fund to them. The court, however, awarded not two-sixths but one-half of the original trust fund, and the matter is, therefore, *res adjudicata.*

In order to arrive at a correct construction of a will, it is necessary to consider not only what actually happened but also what might have occurred.

If the contention of counsel for the exceptants were adopted, it would logically follow, if the surviving *cestui que trust* had left issue, that such issue would have been entitled to one-half of the original *corpus*, despite the fact that the respective issue of the deceased *cestui que trusts* received one-sixth each when their respective parents died. Where two constructions can be

placed upon certain words or combination of words, one producing equality among the beneficiaries, and the other inequality, the law adopts a construction in favor of equality.

It would also follow from said contention, if the first *cestui que trust* had died without issue, that the whole of the fund would have been held for the benefit of the remaining five *cestui que trusts* and their issue; and if the second *cestui que trust* died leaving issue, such issue would have become entitled, either presently or in remainder, to a portion of the *corpus*. On the other hand, if the first *cestui que trust* died leaving issue, they would receive no portion of any accrued principal because of the subsequent death of another *cestui que trust* without issue.

Another result that would follow from said contention is that, notwithstanding the fact that there is issue of the *cestui que trusts*, one-half would go to those entitled to the residuary estate. A further result would be that if a similar situation arose with respect to the residuary estate, an intestacy would follow, and it is a rare case, indeed, that the court will make a finding of intestacy where the will contains a residuary clause.

No such anomalous results follow from the construction adopted by the Auditing Judge. Under that construction there is a complete disposition of the entire *corpus*, except that the contingency of all of them dying without issue is not provided for.

Considering the language of the limitation as a whole, it was the evident intention of testatrix that the income of her estate should be divided during the continuance of the trust among the six *cestui que trusts*, and, in the event of one or more of them dying without issue, among the survivors or the survivor, and that the *corpus* should not fall into the residuary estate if at the termination of the trust there was living issue of the deceased *cestui que trusts*.

With respect to the *cestui que trusts*, she intended that their original one-sixth of the income should be increased upon the death of a *cestui que trust* without issue, and with respect to the issue, it was her intention that they should also share in the principal from which the *cestui que trust* who died without issue derived income.

It frequently happens that a testator, in his endeavor to state the details of a disposition, makes grammatical mistakes, punctuates incorrectly, uses the wrong word or fails to state in express terms what he has in mind. If the general intention can be ascertained, such mistakes are regarded as immaterial. A very common mistake for a testator to make is to use the word "survivors" when he means not merely those of a certain group who survive, but also the issue of any one or more of that group who do not survive. In such case the issue take in place of their parent: see Fox's Estate, 222 Pa. 108; Vance's Estate, 209 Pa. 561; Bacon's Estate, 202 Pa. 535; and Lapsley v. Lapsley, 9 Pa. 130.

It might be added that the rule in Shelley's case does not apply because the will was executed after the passage of section 1 of the Act of July 9, 1897, P. L. 213.

We are of opinion that testatrix intended at the termination of the trust that the surviving issue of the *cestui que trusts* should take *per stirpes*.

Accordingly, the exceptions are dismissed and the adjudication confirmed absolutely.