## Galli's Estate.

Argued January 7, 1941.   Before SCHAFFER, C. J.,
DREW, STERN, PATTERSON and PARKER, JJ.

*Robert T. McCracken,* of *Montgomery & McCracken,*
with him *Edward G. Taulane, Jr.,* and *John F. Headly,*
for appellant.

*Maurice Heckscher,* with him *Samuel B. Scott,* for
appellees.

OPINION BY MR. JUSTICE STERN, January 31, 1941:

Clara R. Galli died in 1911. Disputes having arisen in regard to her will, all the parties in interest in her estate entered into an indenture of settlement in 1916. This indenture provided that five-sixths of the residue of the estate, which part was designated as the "Galli Interest" to distinguish it from the other one-sixth or "deFrenoys Interest," should be held in trust by Philadelphia Trust Company (now Fidelity-Philadelphia Trust Company) to pay the net income (after making certain annual payments which are of no present concern) to Mary R. Ware, Lewis S. Ware, Mary R. B. Meigs, Edward Browning, Edward Roberts, J. R. Evans Roberts, Agnes P. R. Groome, Edith R. Disston and H. Radclyffe Roberts, who were the nephews and nieces of Clara R. Galli, in equal shares during their lives, "and upon the decease of any of said nephews or nieces, then to pay, transfer and deliver the share or proportion of the corpus or principal of said five-sixths part of said rest, residue and remainder unto all the children of such deceased nephew or niece who shall be living at the time of his or her decease, in equal shares, . . . but if any such nephew or niece die without leaving any lawful issue living at the time of his or her death, then to hold and stand seised of the share of such deceased nephew or niece in said five-sixths part of said rest, residue and remainder, IN TRUST for the surviving nephews and nieces and for the same uses, purposes and estate as are hereinbefore set forth, of and concerning the remaining part of said five-sixths part of said rest, residue and remainder and with the same powers and authority, and subject to the same limitations and restrictions as are hereinbefore set forth concerning the same, as fully and completely as if here repeated. It is the intention of the parties of the first part hereto that . . . upon the death, without lawful issue surviving, of any one of said nephews or nieces, the income theretofore payable to said nephew or niece

shall be paid to the surviving nephews and nieces in equal shares."

The first four of the nephews and nieces to die left no issue,—Lewis S. Ware in 1918, Mary R. Ware in 1919, J. R. Evans Roberts and Edith R. Disston in 1922. After the death of each of them the Trustee continued to hold the entire fund in trust, paying the net income in equal shares to the surviving nephews and nieces, so that after the death of Edith R. Disston each such survivor was receiving one-fifth of the net income.

In 1924 H. Radclyffe Roberts died leaving four children, and in 1925 Edward Browning died leaving one child, Edward, Jr. Thereupon the Trustee filed its first account in Court of Common Pleas No. 5 of Philadelphia County. The court confirmed the account and awarded one-fifth of the principal of the trust estate to the Radclyffe Roberts children, one-fifth to Edward Browning, Jr., and the remaining three-fifths to "Philadelphia Trust Co., Trustee for the Estate of Clara R. Galli, deceased, 'Galli Interest,' for Mary R. B. Meigs, Edward Roberts and Agnes P. R. Groome."

In 1926 Edward Roberts died without issue. The Trustee then filed its second account, giving actual notice to all parties in interest in accordance with Rule 79 of the Rules of Equity Practice. In its petition for distribution it stated that a question had been raised by the Radclyffe Roberts children and Edward Browning, Jr., as to whether they were not entitled, at the death of Edward Roberts, to a proportionate share of the principal of the fund supporting the income paid to him in his lifetime, and that it was accordingly requesting the court to determine whether such principal should continue in trust for Mary R. B. Meigs and Agnes P. R. Groome, the surviving nieces, or whether one-fourth thereof was then distributable to Edward Browning, Jr., and one-fourth to the Radclyffe Roberts children, and only the remaining two-fourths should continue in trust for Mary R. B. Meigs and Agnes P.

R. Groome. The petition prayed that the entire principal then in the trust should be awarded to the Trustee for Estate of Clara R. Galli, deceased, "Galli Interest," for Mary R. B. Meigs and Agnes P. R. Groome, but instead of doing this the court awarded it—consisting of three-fifths of the original principal of the trust—to "Philadelphia Trust Company, Trustee for Galli Interest under said indenture of settlement."

In 1933 Mary R. B. Meigs died leaving two children, whereupon the Trustee filed its third account. The filing of this account was advertised, but, as no copy of the advertisement was sent as required by Equity Rule 79 either to the Radclyffe Roberts children or to Edward Browning, Jr., they received no actual notice. In its petition for distribution the Trustee stated that the only persons in interest were the Meigs children and the Trustee for Estate of Clara R. Galli, deceased, "Galli Interest," for Agnes P. R. Groome. The court, by decree of June 26, 1933, therefore awarded one-half of the then remaining principal, or three-tenths of the original principal, to the Meigs children, and the other one-half to "Fidelity-Philadelphia Trust Co., Trustee for Estate of Clara R. Galli, deceased, 'Galli Interest,' for Agnes P. R. Groome."

In 1937 Agnes P. R. Groome died leaving three children, and in 1939 the Trustee filed its fourth account. This time proper notice was given to Edward Browning, Jr., and the Radclyffe Roberts children, but in its petition for distribution the Trustee asked that the balance of principal then remaining, being three-tenths of the original principal, should be divided among the Groome children. This proposed scheme of distribution was contested by the Radclyffe Roberts children and Edward Browning, Jr., who contended that they were entitled to share equally with the Meigs children and the Groome children in the portion of the principal from which the income had been paid to Edward Roberts in his lifetime. The court adopted this view and

awarded to the Groome children, not the three-tenths, or twelve-fortieths, of the original principal then before the court for distribution, but only one-fourth, or ten-fortieths, of such principal, and awarded the remaining two-fortieths to the Radclyffe Roberts children and Edward Browning, Jr.

As a result of this adjudication the situation was that the Groome children had received one-fourth, or ten-fortieths, of the principal of the trust estate, but the Radclyffe Roberts children and Edward Browning, Jr., had respectively received only nine-fortieths, whereas the Meigs children had received on the adjudication of the third account three-tenths, or twelve-fortieths. Accordingly the Radclyffe Roberts children and Edward Browning, Jr., brought bills of review and for an accounting against the Trustee wherein they prayed that the court open the decree of June 26, 1933, that the schedule of distribution adopted on the adjudication of the third account be amended so as to include an award to the Radclyffe Roberts children and Edward Browning, Jr., of two-fortieths of the original principal, the result of which would be that all four lines of the nephews and nieces who left children them surviving would have received an equal one-fourth part of the trust estate, and that the Trustee be required to account to plaintiffs for the amount which it should have distributed to them. The court granted the relief prayed for, and from its decree the Trustee now appeals.

The first question for determination is: Which scheme of distribution was correct,—the one embraced in the adjudication of the third account or the one adopted on the adjudication of the fourth account? Stating it in legalistic phraseology: Under the terms of this indenture of settlement, are the children of a previously deceased life beneficiary entitled to share in the distribution of the principal from which the income was paid to another life beneficiary who subsequently died without issue? This problem is not a novel one in our

state. In *Fox's Estate,* 222 Pa. 108, 70 A. 954, a testator created a trust for his four daughters, the income to be paid one-fourth to each for life; upon the death of any of the daughters leaving issue the principal of her share was to be conveyed to such issue; in case of the death of any of the daughters without issue her share was to be held for the use and benefit of her surviving sisters in the same manner as their own shares. Two of the daughters died, each leaving issue to which the principal of her share was conveyed; then a third daughter died without issue and the question was whether her share should go exclusively to the fourth and last surviving daughter or be distributed in three equal parts among such surviving daughter and the children, per stirpes, of the two daughters who had first died. The court said (p. 113): "That the issue of a sister dying first should . . . be cut off from participation in the share of a sister dying subsequently without issue, would be giving an accidental and irrelevant fact an effect contrary to the manifest general intent. . . . As said by the auditing judge below: 'It is well settled, however, that the word survivor or surviving will be understood as the equivalent of "other," where in any other sense it would lead to an intestacy or to an inequality among those standing in the same degree of relationship to the testator, or to a distribution not in accordance with the general scheme of the will in its entirety. . . .' . . . He [the testator] did not mean to make shares of any group of his grandchildren dependent on the accident of their mother's survival of her childless sister. The word 'other' very clearly expresses his general intent and that is the sense in which he used the word 'survivors.' " The court pointed out that a contrary view would necessitate the inference that the testator intended to die intestate if the last survivor of his daughters should die without issue, even though all his other daughters had left children them surviving.

The interpretation thus adopted in *Fox's Estate* was followed in *Nass's Estate,* 320 Pa. 380, 182 A. 401, and *Albertson's Estate,* 329 Pa. 372, 198 A. 152. There are a number of earlier authorities *(Lapsley v. Lapsley,* 9 Pa. 130; *Lewis' Appeal,* 18 Pa. 318; *Bacon's Estate,* 202 Pa. 535, 52 A. 135; *Vance's Estate,* 209 Pa. 561, 58 A. 1063) which foreshadowed and laid the groundwork for these later decisions. It is clear, therefore, that the Radclyffe Roberts children and Edward Browning, Jr., were entitled, in the present case, to participate equally with the Meigs children and the Groome children in that part of the principal of the trust from which the income had been paid to Edward Roberts, even though their respective parents had died before him, and this for the reason that the word "surviving"—in the provision that the share of any nephew or niece dying without issue should be held for the surviving nephews and nieces for the same uses and subject to the same limitations as their original shares—must be construed as "other" in order to effectuate the obvious general intent of the instrument, which was to create equality among the stirpital lines of children of nephews and nieces and not to make their rights depend upon the "accidental and irrelevant fact" of the order in which the deaths of the nephews and nieces might occur.

The further question then arises whether, even if plaintiffs are otherwise entitled to the relief sought, they are barred by reason of laches in asserting their rights. Their bills seeking modification of the decree of June 26, 1933, were filed approximately six years after that decree was entered. The Trustee contends that since, by section 48 of the Fiduciaries Act of 1917, P. L. 447, the time in which to present a petition of review of an adjudication of the orphans' court is limited to five years after the final decree confirming the account, that period should be adopted, by way of analogy, by the common pleas court sitting in equity. In thus attempting to establish an absolute limit of time for instituting

these proceedings defendant overlooks the fact that this is not merely the case of an erroneous adjudication which some of the parties are seeking to correct, but one in which the adjudication is void so far as they are concerned and therefore never affected their rights. Equity Rule 79 provides that notice of the filing of an account of a fiduciary and of an intention to apply for confirmation thereof must not only be advertised but "a copy of said advertisement must be mailed, at least fifteen days prior to the time fixed for the application, to all persons who are or may be interested in the account or distribution (so far as the same can be ascertained upon reasonable inquiry)." Defendant knew that plaintiffs claimed the right to participate in the Edward Roberts share of the trust estate; it had actually recited their claim in its petition for distribution at the time of the adjudication of the second account and had asked the court to decide the question thus raised, and it also knew that the court had refused to sustain its position and had awarded the principal of the Edward Roberts share back to the Trustee generally under the indenture of settlement, thus keeping the question open for future determination. Nevertheless, when the third account was filed, defendant ignored plaintiffs' claim, and, instead of notifying them and leaving the problem to the court for solution, it not only undertook to decide the question on its own responsibility, but unfortunately decided it erroneously; it represented to the court that one-half of the Edward Roberts share should be awarded to the Meigs children, which, accordingly, the court did, not knowing, of course, that the parties opposed to such a distribution had not been notified of the proceedings and that their absence therefore did not imply acquiescence in the making of the award as prayed by defendant. Under such circumstances the distribution, as far as plaintiffs' rights are concerned, was wholly void: *Commonwealth v. Green*, 4 Wharton 531, 568; *McKee v.*

*McKee,* 14 Pa. 231;* *Commonwealth v. Rogers,* 53 Pa. 470, 475; *Thompson v. Stitt,* 56 Pa. 156, 160; *Richards v. Rote,* 68 Pa. 248, 252; *Lancaster and Mintzer's Appeal,* 111 Pa. 524, 4 A. 333; *Shugars's Estate,* 312 Pa. 472, 167 A. 567; *Krug v. Keller,* 8 Pa. Superior Ct. 78, 82. In the *Shugars* case the court said (pp. 476, 477): "Because of the failure to give the actual notice required by statute, the decree ordering distribution was void as to appellant's claim. It could have no possible effect upon it. Such notice was indispensably necessary to give jurisdiction, and without such notice and an opportunity to appellant to be heard, the decrees of the court were absolutely void."

The decree of June 26, 1933, being void and of no effect as to plaintiffs, it follows that the defense of laches upon which the Trustee relies is unavailing, because, as was said in *Pantall v. Dickey,* 123 Pa. 431, 438, 16 A. 789, 790: "The judgment being void for want of jurisdiction to enter it, it matters not how, or in what mode, or at what time the objection on that ground is brought to the attention of a supervising court. Being void, it has no efficacy at any time." Or, as it was tersely stated in *Romberger v. Romberger,* 290 Pa. 454, 457, 139 A. 159, 160: "No laches can run against a void judgment, which is a mere blur on the record and which it is the duty of the court of its own motion to strike off, whenever its attention is called to it." In *Haverford Township School District v. Herzog,* 314 Pa. 161, 164, 171 A. 455, 457, the court said: "Defendant urges that the lapse of four or five years since the judgment

---

* In this case it was said (p. 237): "The anxiety of the lawmakers to secure to defendants a day in court, after due notice, so sedulously manifested, is but in accordance with the principle, that before the rights of an individual can be bound by a judicial sentence, he shall have notice of the proceeding against him. This is announced to be an axiom of natural justice and of universal application, by MARSHALL, C. J., in the case of the Mary, 3 Peters' Con. Rep. 312."

was entered, without action by plaintiff, amounts to laches which now estops plaintiff from attacking the judgment; but this cannot be for defendant never had a valid judgment since the prothonotary had no power to enter it: it was a nullity and without legal effect. Hence, the passage of time, however great, does not enter into a consideration of its validity." See also *Peoples National Bank of Reynoldsville v. D. & M. Coal Co.*, 124 Pa. Superior Ct. 21, 26, 187 A. 452, 454; *Clineff v. Rubash*, 126 Pa. Superior Ct. 82, 88, 190 A. 543, 546. In *Krug v. Keller*, 8 Pa. Superior Ct. 78, 82, where a trustee filed an account without giving a creditor proper notice, and distributed the fund without meeting the claim, the court held that the claimant could not be convicted of laches since the neglect lay with the trustee in failing to give notice of the filing of the account, and "until some notice was given requiring action he [the claimant] was in no default." And in *Shugars's Estate*, 312 Pa. 472, 167 A. 567, already referred to, where administrators of an estate, on filing their account, failed to give the requisite notice to a creditor, and the decree of distribution was therefore void as to him, the court held that he lost no rights by reason of the fact that the administrators had already distributed the assets of the estate, saying that such distribution would have been a good defense had it been based upon a valid decree, but not where the decree was void as to such creditor because of the administrator's failure to give him notice of the filing of the account.

It may be added that in fact plaintiffs were not guilty of laches. While they knew of the death of Mary R. B. Meigs, they did not know of the filing, audit and confirmation of the third account and distribution thereunder. Moreover, they had been led to suppose, by reason of the action taken by the court on the adjudication of the second account, that the distribution of the Edward Roberts share would not be made until after the death of the last of the nephews and nieces. It is

not contended that they failed to file their bills for review and accounting promptly after they learned of the adjudication of the third account. Neither, as ruled in *Shugars's Estate,* supra, is it any defense that the Trustee had already made distribution under the decree of June 26, 1933. Defendant is not in the position of an innocent distributee. It should have realized that, because of its failure to give notice to plaintiffs, the decree did not affect their rights and that it was therefore making distribution at its peril. To relieve it now from accounting to plaintiffs for the amount due them out of the trust fund, simply because it has made an overpayment to the Meigs children, would be to override the fundamental doctrine of the law that persons having property rights cannot be deprived of them by judicial proceedings of which they were not notified and in which they were not given an opportunity to be heard.

There is an intimation by defendant that plaintiffs ought to be restricted in their right to equitable relief because, even according to their own theory, they should not, on the adjudication of the first account, have received their portions of the shares of the four nephews and nieces who had died without issue, since the distribution of those shares should have awaited the death of the last surviving nephew or niece. It is not pretended that the distribution under the first account resulted in plaintiffs obtaining more than that to which they were entitled, but only that they received their portions of those shares prematurely. However, the Meigs children also received their augmented shares at the death of their mother, Mary R. B. Meigs, and therefore before the death of the last survivor, Agnes P. R. Groome. Since the life beneficiaries alone were affected by the *time* of distributions of principal, neither the Trustee nor the children of any of the nephews and nieces have any standing or interest to raise this question. Moreover, the distribution on the adjudication

of the first account was made with the acquiescence and consent of all the parties, including the then surviving nephews and nieces, all of whom were participants in the proceedings.

The decree is affirmed; costs to be paid by defendant.