## Miller Estate.

Argued November 11, 1954. Before STERN, C. J., STEARNE, JONES, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Robert T. McCracken,* with him *Samuel S. Logan, Jr., John F. Headly* and *Montgomery, McCracken, Walker & Rhoads,* for appellant.

*Charles Wolfe Kalp* and *W. Roger Fetter,* with them *Romain C. Hassrick,* and *James F. McClure,* for appellees.

OPINION BY MR. JUSTICE CHIDSEY, January 3, 1955:

George Barron Miller, a resident of Union County, died on September 1, 1922, testate, survived by his wife, Jennie B. Miller, and a son, Henry B. Miller. Another son, George F. Miller, predeceased the decedent, having died February 9, 1920, leaving to survive him his widow, Genevieve S. Miller, and no issue. Jennie B. Miller, the wife of the testator, died November 12, 1952. Genevieve S. Miller, following the death of her husband, George F. Miller, remarried on August 16, 1930 and now survives as does testator's son, Henry B. Miller.

By his last will and testament and codicils thereto, duly probated before the Register of Wills of Union County, George Barron Miller bequeathed and devised his residuary estate to his widow, Jennie B. Miller, for life, and following her death to his son, Henry B. Miller, absolutely, ". . . all except the sum of twenty thousand dollars bequeathed in trust in the following:

Item: After the death of my wife, I give, devise and bequeath to the Lewisburgh Trust & Safe Deposit Company of Lewisburgh, Penna., in trust the sum of twenty thousand dollars, to be safely invested, and the interest thereof to be paid to Genevieve S. Miller, widow of my deceased son, George B. (sic) Miller, so long as she lives and remains his widow, and when she remarries or dies I direct that the said Lewisburgh Trust & Safe Deposit Company pay the said sum of twenty thousand dollars to the United Evangelical Home, a corporation, in Kelly Township, Union County, Pennsylvania, or to The First Baptist Church of Lewisburgh, Pennsylvania, for the purposes and upon the conditions set forth in items seven and eight of the last will and testament of my deceased son, George F. Miller, dated December 30th, 1919, and duly probated and of record in the Register's Office of Union County, Pennsylvania, at Lewisburgh, in said County.".

Items Seven and Eight of the will of George F. Miller provide as follows: "SEVENTH:—In case there are no children living at the decease of my wife, and in the event that they have no families living, I direct that the said LEWISBURG TRUST & SAFE DEPOSIT COMPANY pay to my only brother, HENRY BARRON MILLER, upon his sole and separate receipt, the interest, income and revenue from all my said estate, during his natural life; and upon the decease of my said brother, HENRY BARRON MILLER, I will, bequeath and devise the whole of said estate to the UNITED EVANGELICAL HOME, situated along Buffalo Creek, in KELLY TOWNSHIP, County of UNION, Commonwealth of PENNSYLVANIA, PROVIDING THE SAID EVANGELICAL HOME WILL ELECT TO COMPLY WITH THE FOLLOWING DIRECTIONS, CONDITIONS AND REQUESTS UNDER WHICH SAID ESTATE IS WILLED, DEVISED, BEQUEATHED AND GIVEN:—(1) I

direct that a suitable and lasting memorial be erected that can be utilized and that will afford the proper facilities for the education and care of orphan children, and that such memorial be called and dedicated the 'MILLER MEMORIAL'. (2) It is my will that said estate is willed, bequeathed and given only under the condition that the said EVANGELICAL HOME does not, at any future time, limit their Orphanage to their own denomination, but that they will accept orphans of other denominations, without discriminating whatsoever so long as they are protestant. (3) I direct that the Board of Trustees of said EVANGELICAL HOME shall have exclusive management of all money derived from said estate, and that they choose to erect a memorial that will be suitable to the needs of the Orphanage, and one that will render valuable service. EIGHTH :— In case the said EVANGELICAL HOME does not elect to comply with the conditions as set forth in this my last Will, in Item SEVEN: I then give, bequeath and devise to the LEWISBURG BAPTIST CHURCH, of the borough of LEWISBURG, County of UNION, Commonwealth of PENNSYLVANIA, to be used in manner as before directed, in Item SEVEN, at their nearest Orphanage, all my said estate.".

The life estate of the testator's widow, Jennie B. Miller, in the sum of $20,000 bequeathed in trust having ended upon her death on November 12, 1952, and Genevieve S. Miller, the widow of George F. Miller, having remarried, Henry B. Miller, successor executor under the will of George Barron Miller, filed an account charging himself with the said sum of $20,000, claiming certain credits and showing a balance for distribution of $19,606.50. On his petition an auditor was appointed to hear testimony and argument and

make recommendations as to the disposition of the fund. After hearings and argument, the auditor filed his report in which he awarded the fund to the Evangelical Home. [1] Exceptions thereto were filed by Henry B. Miller who claimed the fund as the sole heir of George Barron Miller, and jointly by the Lewisburg Baptist Church and the Baptist Orphanage of Philadelphia, Pennsylvania, as the Church's "nearest Orphanage". After argument before the orphans' court all exceptions were dismissed and a decree entered by it confirming the auditor's report absolutely. From this decree Henry B. Miller has appealed.

Preliminarily it may be observed, and it is not contended otherwise by appellant or appellees, that the pertinent provisions of the will of George F. Miller (Items Seven and Eight supra) were incorporated by reference in the will of George Barron Miller (see *Clark v. Dennison*, 283 Pa. 285, 129 A. 94) and that upon the death of the life tenant, there being no duties imposed upon the trustee other than the payment of the fund involved to the party entitled, such party became immediately entitled thereto.

Following the death of the life tenant of the fund, Jennie B. Miller, on November 12, 1952, the Board of Trustees of the Evangelical Home, in pursuance of action by its executive committee, passed the following resolution: "BE IT HEREBY RESOLVED: 1. That the Board of Trustees of the Evangelical Home hereby elect to accept the bequeath of George Barron Miller, deceased, and elect to comply with the directions, conditions and requests under which the said bequest is and has been made. 2. That if and when the fund of the bequest is received by the Evangelical Home, that

---

[1] It was agreed and stipulated that the United Evangelical Home is one and the same corporation as the Evangelical Home.

such fund shall be placed in and added to the present fund known as the chapel fund, and that thereafter such fund shall be known as the 'Miller Memorial' Chapel Fund; that such fund shall be used in erecting a chapel wing or building and auditorium which shall be used to extend the facilities for the education and care of the orphanage children; that such wing or building and auditorium shall be known as, and dedicated as the 'MILLER MEMORIAL'. 3. That the Evangelical Home continue the policy that has been in effect since the founding of the orphanage, in that they do not, nor at any future time will limit their orphanage of the Evangelical Home to their own denomination, but that they will continue throughout the existence of the orphanage, to accept orphans of other denominations, without discrimination whatsoever, according to the needs of the individual child. 4. That this Board shall retain exclusive direction and control of the funds derived from this bequest in erecting the 'MILLER MEMORIAL', commensurate with the needs of the orphanage. 5. That the action of the executive committee of the Board of Trustees, be and hereby is fully ratified, in commencing to perfect the claim of the Evangelical Home to the bequest of George Barron Miller, deceased.".

It is clear that Item Seventh of George F. Miller's will incorporated in the will of George Barron Miller, imposed a condition precedent to the vesting of the bequest in the Evangelical Home, namely, that it *elect to comply* with the directions, conditions and requests subsequently set forth. If it did not so elect, there was an alternate gift over to the Lewisburg Baptist Church. The Home met the condition precedent by its formal resolution electing to comply with the terms imposed.

The appellant's contention is that the Home is not entitled to the bequest because it did not meet the re-

quirement of subdivision (3) of Item Seventh above set forth. In his brief appellant's learned counsel deletes the portion thereof which provides that ". . . the Board of Trustees . . . shall have exclusive management of all money derived from said estate," and quotes, emphasizes and relies upon the remainder of this subdivision that ". . . they choose to erect a memorial . . . suitable to the needs of the Orphanage, and one that will render valuable service.". It is argued that since the charitable bequest called for the erection of a suitable and lasting memorial to the testator, the choice of the memorial constituted a condition precedent to the vesting of the bequest; that the resolution passed by the trustees showed that no definite decision was made with respect to the memorial and that the testimony of representatives of the Home at the hearing before the auditor was to the effect that while various plans had been discussed by the trustees for using the bequest, nothing definite had been decided, or plans adopted as to cost, size or whether the memorial would be an auditorium, chapel or wing.

We do not regard subdivision (3) of Item Seventh as imposing a condition precedent upon the vesting of the bequest. When read in its entirety the direction in subdivision (3) adds nothing of substance to subdivision (1) for the Board of Trustees would have exclusive management of the fund according to the constitution and by-laws of the Home which were introduced into evidence, and in that body would lie the choice of the memorial to be erected affording proper facilities for the education and care of orphan children. Both subdivisions (1) and (3) apply to the application and use of the fund after it is received. The only condition precedent to the receipt of the fund was the election to comply. However, when received, the Home would become a trustee for itself and be required to carry out

the purposes specified in the gift (*Craig Estate,* 356 Pa. 564, 52 A. 2d 650). If it failed in this regard, compliance with the terms of the trust could be enforced by the Attorney General, or by a person having a special interest in such enforcement: Restatement, Trusts, §391. And see *Wiegand v. The Barnes Foundation,* 374 Pa. 149, 97 A. 2d 81.

In support of his contention appellant relies upon *Wanamaker's Estate,* 312 Pa. 362, 167 A. 592, where the provision of the will was ". . . In the event of Princeton University, Princeton, New Jersey, establishing a permanent course for Mercantile Business Instruction, I order and direct the annual payment of Fifteen Thousand ($15,000.00) Dollars for the creation of Ten (10) Scholarships, of Fifteen Hundred ($1,500-.00) Dollars, each, per year, to be known as the Thomas B. Wanamaker Scholarships for Mercantile Business. . .". The university did not establish a course for mercantile business instruction, nor did it propose to. In claiming the bequest it relied on the existence of other courses as substantially meeting the condition imposed upon the gift. This Court held in a cogent opinion by Mr. Justice LINN that the courses offered and relied on by the university did not constitute a course for mercantile business instruction as contemplated by the testator, and since the establishment of such course was a condition precedent to the vesting of the bequest, the university was not entitled thereto. A marked difference between the *Wanamaker* case and the present case is at once apparent. In the former the object of the charitable bequest was not in existence but was to be established before the gift in trust would become effective. Here the object of the testator's charity, an orphanage for the education and care of orphan children, existed, and upon the Home's election to comply in the administration of the trust with the direc-

tions, conditions and requests of the testator, it became immediately entitled to the bequest.

In the case of *The City of Philadelphia v. The Heirs of Stephen Girard,* 45 Pa. 9, Stephen Girard's will was in issue as to sections thereof, which established trusts for various purposes, namely, the erection of a college; development of certain streets to secure the safety, health and comfort of citizens, etc. Nowhere did the court prescribe that definite planning or specifications for the application of the trust funds be submitted or be in existence prior to the vesting of the trust; rather the court said: "In all gifts for charitable uses the law makes a very clear distinction between those parts of the writing conveying them, which declares the gift and its purposes, and those which direct the mode of its administration. And this distinction is quite inevitable, for it is founded in the nature of things. We must observe this distinction in studying Mr. Girard's will, otherwise we run the risk of inverting the natural order of things by subordinating principles to form, the purpose to its means, the actual and executed gift for a known purpose to the prescribed or vaticinated modes of administering it, that are intended for adaptation to an unknown future, and of thus making the chief purpose of the gift dependent on the very often unwise directions prescribed for its future security and efficiency.".

Appellant also contends that the testator's bequest must fail because it is insufficient to accomplish its designated purpose, citing Restatement, Trusts, §399, comment b, and *Hildebrand's Estate,* 47 D. & C. 537. It is argued that the testator having expressed the intent to perpetuate the Miller name and through a change of circumstances, having provided an inadequate bequest, the trust fails absolutely. We cannot agree. The testator prescribed nothing as to the size

or character of the memorial. It could be modest or pretentious. The charitable intent could be carried out by an addition to an existing building as contemplated by the trustees, and this could not only be dedicated as a "Miller Memorial" but could afford facilities for the "education and care" of orphan children, "suitable to the needs of the Orphanage". The testator did not indicate the extent of the facilities to be added to those existing in the Home. A reasonable construction of the bequest must be given in favor of the beneficiary and a strict construction against a forfeiture. See *Patterson's Estate,* 333 Pa. 92, 3 A. 2d 320.

To succeed in his claim it was necessary for appellant not only to refute the claim of the Home but that of the alternative beneficiary, the Baptist Church of Lewisburg, which did not appeal from the decree of the court below. Since we decide that the Evangelical Home was entitled to the fund, it is unnecessary to consider appellant's argument in this regard.

The decree is affirmed at appellant's cost.