IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| TRUST UNDER WILL OF AUGUSTUS T. ASHTON, DECEASED DATED JANUARY 20, 1950 | : : : : : : : : : : : : | No. 36 EAP 2020 |
| | | Appeal from the Judgment of Superior Court entered on 6/3/2020 at No. 3609 EDA 2018 affirming, reversing and remanding the order entered on 7/9/18 in the Court of Common Pleas, Philadelphia County, Orphans' Court Division at No. 1039 ST of 1952 |
| APPEAL OF: ELIZABETH A. REED | : : | ARGUED: April 14, 2021 |

*OPINION*

**JUSTICE SAYLOR**                    **DECIDED: October 4, 2021**

In this appeal by allowance, we consider whether a vested beneficiary of a trust has standing to challenge the trust's administration where her benefit consists of a fixed annuity and the trust corpus is sufficient to provide the benefit for many years.

**I.**

Augustus Ashton ("Settlor") died in October 1951. In his will, he created a trust to be funded by the residue of his estate for the benefit of his family members and certain charitable interests (the "Trust"). In particular, the will created eight separate fixed annuities benefitting designated family members; five of those annuities have since terminated pursuant to their terms. Appellant, Settlor's grandniece, is one of three remaining beneficiaries. She is entitled to $2,400 annually irrespective of the size of the

Trust's corpus for the remainder of her life, and then any surviving children or grandchildren born during her lifetime will receive a portion of her $2,400 share. At this juncture, the sums payable to all three remaining beneficiaries total $11,400 annually. Every beneficiary is entitled to the Trust's income rather than its principal.

The will appointed Land Title Bank and Trust Company in Philadelphia ("Land Title") as trustee. In May 1951, Settlor executed a codicil appointing Clement Bowen as co-trustee. The same day, he sent a letter to Land Title confirming his understanding that the trustee would receive, as compensation, an annual commission of five percent of the gross income collected. The Trust has been administered solely by Land Title or its corporate successors – currently, PNC Bank, National Association ("PNC") – since Mr. Bowen's death in 1971, as neither the will nor the codicil directed that Mr. Bowen be replaced. The Trust was initially funded in 1951 with approximately $2.6 million in assets. By 2017, the corpus had grown to around $72.3 million.

Under the terms of the will and the May 1951 letter to Land Title, the trustee is paid its commission from the Trust's gross income collected during a particular year, and the beneficiaries are paid their respective fixed sums out of the Trust's income net of the commission. After that, additional net income is added back into its corpus as needed to prevent it from dipping below the value established at the time of Settlor's death. Finally, the balance of the Trust's net income for the year is made available as scholarship money to students at the University of Pennsylvania (the "University") who meet the criteria stated in the will. After the termination of fixed annuity payments to all named beneficiaries, the Trust will continue to fund scholarships at the University in perpetuity.

In January 2018, PNC generated a Fourth and Interim Account documenting transactions that occurred between November 1983 and December 2017 (the "Fourth

Account"). PNC filed the Fourth Account in the orphans' court, together with a Petition for Adjudication/Statement of Proposed Distribution (the "Petition"), as required. *See* Pa. O.C. Rule 2.4.

Among other matters, the Petition set forth two requests for adjudication. In the first request, PNC sought approval to divide the Trust into two: the first to be funded with $5 million and dedicated to the named beneficiaries' annuity payments, and the second to be funded with the balance of the Trust's present assets and dedicated to providing scholarships for students at the University as a purely charitable trust. *See generally* 20 Pa.C.S. §7740.7(b) (relating to the division of trusts with court approval). The theory was that the latter trust could take advantage of tax benefits available to purely charitable trusts. *See* Petition for Adjudication, Rider to Item 14, at 1.

In its second request, the Petition sought authorization for certain changes to PNC's fees as the sole remaining trustee. PNC asked for a one-time retroactive commission of approximately $730,000, representing one percent of the market value of the Trust as of the previous month. *See id.* at 2. As well, PNC sought to increase its compensation going forward.[1] In particular, it asked for approval to begin charging fees in accordance with its institutional fee schedule, albeit discounted by 20%. *See id.* at 2-3. This would give PNC the ability to charge fees as a percentage of the "account" value rather than a percentage of the income.[2]

---

[1] Pursuant to a May 1951 letter from Settlor to Land Title, the trustee received an annual commission of five percent of the gross income collected by the Trust. With the consent of the University memorialized in a letter from its treasurer dated January 2, 1969, the commission was increased to seven percent of gross income. There is no suggestion that the other beneficiaries or the orphans' court approved of this change.

[2] To this end, PNC attached to the Petition its Institutional Asset Management Schedule of Charges, which lists fees for irrevocable trusts and charitable irrevocable trusts. *See id.*, Rider to Item 14, at Exh. B(1). Under the schedule, as noted, the annual (continued…)

Acting as *parens patriae*, the Attorney General issued a "no objection" letter in response to PNC's proposed changes. *See generally* 20 Pa.C.S. §7710(d); *In re Pruner's Estate*, 390 Pa. 529, 531-32, 136 A.2d 107, 109 (1957) (explaining that the Commonwealth, acting through the Attorney General, retains the authority to oversee charitable trusts).

After filing the Fourth Account with the orphans' court, PNC, through counsel, sent a letter to Appellant explaining that the account had been filed with the court and that it would be called for audit on a date certain. *See* Pa. O.C. Rule 2.5(a)(3) (providing that accounts may not be confirmed unless the accountant gives written notice to, *inter alia*, all trust beneficiaries); *In re Galli's Estate*, 340 Pa. 561, 569-70, 17 A.2d 899, 902-03 (1941) (same). The letter included the following directive:

> [I]f you have any objection to any transaction shown in the [Fourth] Account, to the proposed Fee Arrangement or the division of the Trust, or to any payment, failure to pay, distribution proposed, or any other aspect of the Petition for Adjudication/Statement of Proposed Distribution, you must file written objections in conformity with [Orphans' Court] Rule 2.7 with the Clerk of the Court on or before the audit date. If you do not file any objections, you will be deemed to have approved the Account as stated and agreed with the Fee Agreement, the division of the Trust, and the Trustee's proposed disbursements and distribution.

Letter from Heiki Sullivan of Ballard Spahr, LLC, to beneficiaries, Jan. 5, 2018, at 2.

In conformance with the above, Appellant filed objections with the court, in which she made numerous assertions with regard to PNC's management of the Trust. *See* Pa. O.C. Rule 2.7. She suggested, for example, that PNC had: failed to keep track of

---

(…continued)

commission is a percentage of the value of the account, as opposed to income; as well, there are other miscellaneous fees such as an annual maintenance charge for non-charitable trusts, transaction charges when there is an outside investment manager, and unspecified fees charged to irrevocable charitable trusts requiring "significant services relating to the processing of scholarships." *Id.*

scholarship recipients and amounts as required under the will (thus allegedly permitting scholarship money to be misdirected to the University's endowment), *see* Elizabeth Ashton Reed, Objections to Fourth & Interim Account of PNC Bank, N.A., Trustee, filed April 2, 2018 (C.P. Phila.), at 3; improperly charged the Trust approximately $2.3 million in fees, *see id.* at 10; and engaged in instances of self-dealing and wasteful spending, in violation of PNC's duty of loyalty to the Trust's beneficiaries, *see id.* at 10-12.[3]

Appellant also averred that any retroactive change to the commission realized by PNC, or increase in fees payable to PNC, would be improper. *See id.* at 10. Further, she objected to the request to divide the Trust, asserting any such division would be improper. *See id.* Finally, Appellant requested that her daughter be appointed as successor co-trustee, arguing it was Settlor's intent to have two co-trustees managing the Trust at all times. *See id.* at 12-13.

In response, PNC filed preliminary objections, contending that Appellant lacked standing to raise her objections – notwithstanding that PNC had invited her to do so – as she had no legally cognizable interest in the Trust's administration. In this respect, PNC asserted the proposed changes would have no effect on Appellant's $2,400 annual benefit. *See* Preliminary Objections of PNC Bank, Trustee, April 23, 2018.[4]

---

[3] As to this latter contention, Appellant alleged PNC invested Trust assets in: more expensive share classes when less expensive classes were available, resulting in greater fees and benefits to PNC and its affiliates at the expense of the Trust; proprietary and/or affiliated funds from which PNC receives undisclosed embedded compensation; equities and other security investments utilizing "soft dollars"; and securities where a PNC affiliate receives more favorable trading results as a result of policies and procedures controlling trade allocation and trade aggregation, at the expense of the Trust.

[4] A contingent beneficiary also filed objections, maintaining that PNC had not adequately explained the basis for its entitlement to $730,000 in retroactive fees, and alleging that PNC's seven-percent commission on the Trust's income was sufficient (continued…)

The Orphans' Court sustained PNC's preliminary objections with regard to some of Appellant's objections, including the alleged omissions in the administration of the University's scholarships. Those items are not at issue in this appeal. However, the court overruled PNC's preliminary objections as to several other of Appellant's objections, holding Appellant had standing with respect to all such claims. *See In re Augustus Trask Ashton*, No. 1039 ST of 1952, Decree at 2 (C.P. Phila. July 9, 2018). After PNC obtained permission from the Superior Court to file an interlocutory appeal, *see* Pa.R.A.P. 1311, the orphans' court issued an opinion explaining its ruling as to each of Appellant's claims. *See In re Augustus Trask Ashton*, No. 195201039, Opinion Sur Appeal, 2019 WL 1030718 (C.P. Phila. Feb. 25, 2019).

First, the court held Appellant had standing as a vested income beneficiary to object to aspects of the Trust's administration because she is entitled, not just to one income payment, but to payments for the remainder of her life. The court reasoned that payments many years into the future could potentially be affected if the Trust were improperly administered. *See id.* at *3-4.[5]

Second, the court found that Appellant's interest in seeking appointment of a successor co-trustee was sufficient to give her standing because she was alleging that

_____

(…continued)
compensation. The court sustained PNC's preliminary objections to those objections, and they are not part of this appeal.

[5] In reaching this holding, the court found inapposite the parties' competing positions as to whether Appellant had so-called "special interest" standing. The court expressed that such standing only pertains in relation to a charitable trust where the litigant is not a beneficiary "but is in some meaningful way in a different position than the general public with respect to the trust." *Id.* at *3 n.14 (citing *In re Francis Edward McGillick Found.*, 537 Pa. 194, 199, 642 A.3d 467, 469-70 (1994) (recognizing standing where the party was involved in the trust's administration)). *See generally In re Miller's Estate*, 380 Pa. 172, 179, 110 A.2d 200, 203 (1955); RESTATEMENT (SECOND) OF TRUSTS §391.

PNC had engaged in self-dealing and other breaches of its fiduciary duty; as a consequence, the court continued, appointment of a co-trustee would benefit Appellant by protecting against any further misconduct along those lines. *See id.* at *4-5.

Third, the court determined Appellant had standing to challenge the new fee arrangement and retroactive fee increase proposed by PNC, as any increase in fees, commissions, or other payments to PNC could potentially affect Appellant's benefit. In this regard, the court rejected the premise that litigants who are only entitled to a small benefit should be denied standing, expressing that no case precedent supported that concept and, moreover, any breach of a trustee's duty of loyalty represents an independent harm to beneficiaries. *See id.* at *5-6.

Fourth, the court concluded Appellant had standing to object to the division of the Trust into two trusts, noting that the Trust as it presently exists prioritizes the annuitants over the charitable beneficiary, and that the proposed division would reverse this prioritization by allotting 93% of the corpus to the charitable trust. Relatedly, the court explained, dividing the Trust into two would defeat Settlor's stated purpose of having the entire trust available to pay annuities before anything is paid to the University. In the court's view, this action would be contrary to the established law of wills under which courts may not rewrite a will to account for circumstances for which the testator failed to provide. *See id.* at *6-7 & n.22 (quoting language from the will stating that the annuitants should be prioritized over the University).[6]

The Superior Court affirmed in part, reversed in part, and remanded in a published opinion. *See Trust Under Will of Ashton*, 233 A.3d 869, 880 (Pa. Super. 2020). The court held that Appellant lacked standing to raise most of her objections due

---

[6] The court also indicated that testamentary trustees are officers of the court and, as such, the court retains inherent authority to oversee their activities. *See id.* at *7. There is no issue presently before this Court concerning that aspect of the court's disposition.

to the small size of her benefit in comparison to the trust corpus. In particular, the court found that Appellant could not demonstrate her benefit would be affected even if PNC mismanaged the account during the relevant accounting period, *see id.* at 876, obtained retroactive compensation, and established a higher fee schedule. *See id.* at 879. In this regard, the court, in effect, instituted a proportionality test for standing, suggesting that, because Appellant's yearly benefit is only a small portion of the value of the assets, any harm stemming from PNC's alleged improper conduct was indirect and speculative. *See id.* at 876 & n.6 (stating there were "sufficient assets for the Trust to continue to pay [Appellant] $2,400 annually," and noting such payment amounted to .0033% of the Trust corpus).[7] The court additionally suggested that Appellant's position assumed that the orphans' court would not exercise its authority – and that the University and the Attorney General would "sit idly by" – in the event PNC ever mismanaged the Trust to the point of nearly depleting its assets. *Id.* at 879.

Nevertheless, the court held that PNC's proposed plan of transferring funds into a separate trust for Appellant's benefit could directly affect her right to receive her annual stipend. *See id.* at 880. With regard to PNC's argument that Appellant's right to receive $2,400 was protected because it proposed funding the account with $5 million – which would be sufficient to guarantee all future yearly $2,400 payments – the court responded, somewhat inconsistently with its prior reasoning, that "the amount of funding goes to the merits of the division of the Trust and not to Appellee's standing to challenge the transfer of her right in the existing Trust to a new trust." *Id.* Thus, the

---

[7] It may be observed that the matter did not progress beyond pleadings in the orphans' court. As such, no evidentiary record or judicial findings had been developed to support the Superior Court's factual determinations in this regard.

intermediate court affirmed the Orphans' Court's order insofar as that court held that Appellant had standing to contest the Trust's division.[8]

This Court granted further review limited to the following issue as framed by Appellant:

> Did the Superior Court err when it held that the equitable property interest in the trust res of a current vested beneficiary does not establish the beneficiary's automatic standing to raise issues with the Trustee's breach of fiduciary duties to the Trust, but instead a court must evaluate each and every beneficiary's individualized financial loss to determine if it meets some unknown threshold sufficient to meet the "substantial, direct and immediate" test?

*Trust Under Will of Ashton*, ___ Pa. ___, 241 A.3d 353 (2020). As PNC did not cross-petition for review of the portion of the Superior Court's decision holding Appellant has standing to contest the division of the trust into two trusts, that ruling is not presently before this Court.

## II.

To obtain judicial resolution of a controversy, a party must have standing to maintain the action. *See Fumo v. City of Phila.*, 601 Pa. 322, 972 A.2d 487, 496 (2009). The "core concept" of standing is that the litigant must be "adversely affected" in some way. *Wm. Penn Parking Garage v. City of Pittsburgh*, 464 Pa. 168, 192, 346 A.2d 269, 280 (1975); *see also Markham v. Wolf*, 635 Pa. 288, 298, 136 A.3d 134, 140 (2016) (noting that to establish standing, the party advancing the objection or suit must be aggrieved). Under this Court's precedent, the prerequisites to standing are satisfied where the complaining party's interest is substantial, direct, and immediate, *see In re Milton Hershey Sch.*, 590 Pa. 35, 42, 911 A.2d 1258, 1261-62 (2006), meaning that the

---

[8] Senior Judge Colins dissented, and would have affirmed as to all issues based on the orphans' court's opinion. *See id.* at 880.

party's interest surpasses that of the general public in procuring obedience to the law, the harm alleged was caused by the matter complained of, and the harm is not remote and speculative. *See Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth*, 621 Pa. 260, 279, 77 A.3d 587, 599 (2013). In evaluating whether Appellant has standing, we assume the truth of her well-pleaded allegations. *See Yocum v. Gaming Control Bd.*, 639 Pa. 521, 536, 161 A.3d 228, 237 (2017).

## III.

### A. Contested transactions

Appellant contests several transactions noted in the Fourth Account which she claims amount to self-dealing or otherwise to a breach of trust. Under the Uniform Trust Act (the "UTA"),[9] a trustee who commits a breach of trust is "liable to beneficiaries affected." 20 Pa.C.S. §7782(a). Much of the disagreement among the parties concerns whether Appellant can be seen as "affected" by these alleged breaches.

---

[9] Act of July 7, 2006, P.L. 625, No. 98 (as amended 20 Pa.C.S. §§7701-7790.3). The UTA, comprising most of Chapter 77 of the Probate, Estates and Fiduciaries Code, is a modified enactment of the Uniform Trust Code (the "UTC"), approved by the National Conference of Commissioners on Uniform State Laws. *See* 20 Pa.C.S. Ch. 77, Joint State Government Commission Comment – 2005, *Prefatory Comment*. Subject to two exceptions that are not presently relevant, the UTA applies to all Pennsylvania trusts, including those created before its enactment. *See* Act 2006-98, at §16(3); *Trust Under Agreement of Taylor*, 640 Pa. 629, 633, 164 A.3d 1147, 1149 (2017).

The organization of the UTC was retained throughout the UTA, although several provisions of the UTC were rewritten and others were not adopted. Where a UTA section is substantially similar to its UTC counterpart, a reference to the UTC section number appears in the section heading. Where UTC provisions were substantially retained, the UTC comments are applicable to the extent of the similarity. *See* 20 Pa.C.S. Ch. 77, Joint State Government Commission Comment – 2005, *Prefatory Comment*; *see also* 1 Pa.C.S. §1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them.").

It is not disputed that Appellant is a named beneficiary of the Trust entitled to proceeds from its income. Nor is it contested that Appellant has thus far received the yearly benefit which she is due. Although PNC denies that the Superior Court utilized a proportionality litmus to ascertain whether Appellant's interest was sufficient to confer standing, *see* Brief for PNC at 34, 49, its chief objection to finding such an interest rests on a proportionality rationale: namely, that due to the small size of Appellant's benefit *in comparison to* the value of the Trust, any harm to her ability to continue receiving the benefit is at best speculative and remote. *See id.* at 30, 34, 49. Additionally, the University maintains that Appellant is attempting to insert herself into an oversight role, thereby undermining the authority of the Attorney General. *See* Brief for University of Pennsylvania at 13; *accord* Brief for Attorney General at 29. PNC continues that the issues Appellant raises will only potentially affect the University as the charitable beneficiary. Because the general public is the beneficiary relative to charitable trusts, moreover, PNC reasons that Appellant's interest is no different from that of the general public. *See* Brief for PNC at 23, 30-31, 45-46 (citing 20 Pa.C.S. §§§7735(c), 7710(b)). As supporting authority, PNC highlights an unreported county court decision which it has attached as an appendix to its brief. *See id.* at 31 n.10 (citing *Mouser Trust*, No. 03-2474, *slip op.* (C.P. Montgomery Aug. 23, 2004)).

Appellees' reference to the charitable remainder of the Trust is not determinative: Appellant stands on a different footing relative to the Trust than members of the general public because she is a named beneficiary with rights to the proceeds, and the existence of the charitable remainder does not alter that circumstance. Moreover, it would be arbitrary to conclude that individuals entitled to a small annuity lack standing

*only* when a charitable remainder exists.[10]  Nor does PNC suggest reasons why the Attorney General's, or the University's, ability to exercise oversight affirmatively negates the possibility that Appellant also has standing to raise objections regarding the administration of the Trust.

More fundamentally, PNC's position misunderstands the nature of the duties it owes Appellant under the UTA and her remedies for breaches of those duties.  By its nature a trust involves property transferred to one person, the trustee, to manage for the benefit of another, the beneficiary.  Because the trustee stands in a fiduciary relationship to the beneficiary, the trustee is obligated to manage the property in the interests of the beneficiary, and not himself.  *See In re Noonan's Estate*, 361 Pa. 26, 31, 63 A.2d 80, 83 (1949).  In return, the trustee is entitled to reasonable compensation.  *See* 77 Pa.C.S. §7768 (relating to "Compensation of trustee – UTC 708").  "Perhaps the most fundamental duty of a trustee is the trustee's duty of loyalty . . ., often stated as the duty to act solely in the interests of the beneficiaries."  BOGERT'S THE LAW OF TRUSTS AND TRUSTEES §26 (June 2021 Update) (footnote omitted).

> This duty is sometimes stated as the rule of undivided loyalty.  The trustee must administer the trust with complete loyalty to the interests of the beneficiary, without consideration of the personal interests of the trustee or the interests of third persons.  The application of the duty of loyalty reflects the concern that a conflict of interest may prevent the trustee from exercising independent and disinterested judgment on behalf of the trust.

*Id.*  This Court has echoed the above concerns, noting:

---

[10] Indeed, the charitable remainder – and the concomitant precept that the public at large is the beneficiary – is a mere fortuity in relation to Appellant and the other annuitants, as it does not directly impact upon their ability to receive their benefit:  it is only after such benefits are distributed that the residual income (if any) is made available for scholarships.  PNC's argument regarding the lack of harm to Appellant would be the same if Settlor had specified that the residual income be given to a private, for-profit corporation, or simply added to the corpus.

> He that is entrusted with the interest of others, cannot be allowed to make the business an object of interest to himself; because, from the frailty of nature, one who has the power will be too readily seized with the inclination to use the opportunity for serving his own interest at the expense of others for whom he is entrusted.

*Noonan's Estate*, 361 Pa. at 31, 63 A.2d at 83 (quoting *Beeson v. Beeson*, 9 Pa. 279, 284 (1848)).

Thus, under Pennsylvania law PNC acts under a duty of loyalty which obligates it to "administer the Trust solely in the interests of the beneficiaries." 20 Pa.C.S. §7772(a) (relating to "Duty of loyalty – UTC 802"). If a trustee engages in self-dealing, it has breached its duty of loyalty by the very act. *See* RESTATEMENT (SECOND) OF TRUSTS §170(1) & Comments. Other duties inherent in the fiduciary relationship include a duty to administer the trust prudently, to incur only reasonable costs, and generally to use any specialized expertise possessed by the trustee which is relevant to the trust. *See* 20 Pa.C.S. §§7774-7776. As well, a trustee has a duty to enforce claims in favor of the trust and to defend against claims against the trust, *see id.* §7780.1, to keep and render clear and accurate accounts with respect to the trust, *see* RESTATEMENT (SECOND) OF TRUSTS §172; *In re Stollenwerk's Estate*, 3 A.2d 961, 963 (Pa. Super. 1939); 11A SUMM. PA. JUR. 2D *Probate* §40:9, to respond to reasonable requests for information, *see* 20 Pa.C.S. §7780.3, and, overall, to act in good faith in accordance with the trust's purposes. *See id.* §7705(b).

On the other side of the equation stand the persons to whom these duties run, most notably, the beneficiaries. Income beneficiaries are entitled to have the trust corpus be used to generate the benefit they are provided under the trust. Unless the trust instrument directs otherwise, this precept applies to the full trust corpus because it is the corpus as a unit which generates the income used to provide the benefits involved, even where they are small compared to the value of the trust assets. Thus,

the duties described above run to the beneficiaries in relation to the trust as a whole, and the beneficiaries have an equitable interest in the entire trust res. *Accord Jones v. Jones*, 344 Pa. 310, 313, 25 A.2d 327, 329 (1942); *see Commonwealth v. Stewart*, 338 Pa. 9, 14, 12 A.2d 444, 446-47 (1940) (explaining that, in addition to in personam rights against the trustee, "the beneficiary also has rights in rem, an actual property interest in the subject-matter of the trust, an equitable ownership of the trust res"). "By virtue of that interest the beneficiary is entitled to enforce the trust and to obtain redress . . . in case of breach." *Jones*, 344 Pa. at 314, 25 A.3d at 329; *accord* Brief for Appellant at 21 (advancing that trust beneficiaries "enjoy rights in and to the whole of the trust, to have all of the trust corpus available and used exclusively for the benefit of the beneficiaries, invested prudently, and free of fiduciary infidelity, including self-dealing").

The above description reflects precepts which are established in the law of trusts,[11] and which rest on a presupposition that a breach of trust gives rise to an independent injury relative to any beneficiary who holds an equitable interest in the trust res. *See* 77 Pa.C.S. §7781, Uniform Law Comment ("Beneficiaries and cotrustees have standing to bring a petition to remedy a breach of trust."). If this were not so, it would be difficult to explain how *any* party has standing to challenge transactions that amount to self-dealing which do not actually harm the trust corpus; yet under Pennsylvania law, self-dealing by a fiduciary can indeed be challenged in such instances. *See Noonan's Estate*, 361 Pa. at 30, 63 A.2d at 83 (deeming it immaterial that, in an act of self-dealing, the fiduciary obtained a fair price for a property he sold); *accord Miller v. Bank of Am., N.A.,* 352 P.3d 1162, 1166 (N.M. 2015) (referring to this concept as the "no further inquiry" rule); *see also Everhart v. Searle*, 71 Pa. 256, 260 (1872) (reasoning

---

[11] Pennsylvania's common law of trusts and principles of equity remain in force to the extent they do not conflict with the UTA or other legislation. *See* 20 Pa.C.S. §7706.

that "the rule forbidding self-dealing is not intended to be remedial of an actual wrong, but preventive of the possibility of it"); *In re Estate of Harrison*, 745 A.2d 676, 680 (Pa. Super. 2000); *In re Paxson Trust I*, 893 A.2d 99, 122 (Pa. Super. 2006) ("Once self-dealing is established, a surcharge may be applied to a fiduciary, not as compensation for any loss to the estate, but as punishment for the fiduciary's improper conduct."). These principles would be substantially undermined, moreover, if this Court were to impose a monetary-harm overlay as a prerequisite to a request for equitable relief, or to endorse a proportionality test along the lines of that employed by the Superior Court.[12]

Still, PNC posits that recognizing standing in favor of persons in Appellant's position may be socially undesirable. Most notably, PNC expresses that individuals with only a small benefit may begin lodging challenges solely to extract a settlement. *See* Brief for PNC at 25 (raising the specter of "troll-like litigation" by "improper plaintiffs" with a motive to "strong-arm settlements and otherwise gain leverage over the actual stake-holders"). The Attorney General adds that if Appellant is allowed to litigate her objections, the litigation expenses will, in effect, be paid using monies that would otherwise have gone to scholarships at the University, thereby harming the public interest. *See* Brief for Attorney General at 30.

While these may be valid concerns, limiting standing in the manner advanced by Appellees could also lead to unintended consequences. For example, in a trust similar to the one presently at issue – albeit absent the charitable remainder supervised by the

---

[12] The Pennsylvania Bankers Association, as *amicus curiae* favoring affirmance, suggests that a ruling in favor of Appellant would improperly revive the "legal rights" test which it claims this Court rejected in *Wm. Penn Parking Garage*. *See* Brief for Pa. Bankers Ass'n at 4. However, that decision rejected a *limitation* on standing pursuant to which a person could only challenge governmental action if "he alleged injury of a sort which would give rise to a cause of action against another individual." *Wm. Penn Parking Garage*, 464 Pa. at 200 & n.25, 346 A.2d at 285 & n.25. It did not restrict the *recognition* of standing by a person asserting a legal right.

Attorney General – the trustee could divert substantial monies to its own benefit through deliberate self-dealing. This conduct could then be insulated from challenge by any of the named beneficiaries due to a threshold requirement that, in order to litigate, the beneficiary must establish personal monetary harm in addition to harm to the trust. Notably, these are the types of competing social policy considerations the Legislature is better positioned than this Court to evaluate and balance. *See Williams v. City of Phila.*, 647 Pa. 126, 151 & n.21, 188 A.3d 421, 436 & n.21 (2018) (highlighting the "superior resources available to the General Assembly in assessing matters of social policy"). If that body ultimately concludes that these factors should be resolved in a manner that denies equitable relief absent a certain predicate showing of injury, it has the power to enact legislative changes which embody such a determination.

We conclude, then, that a violation by the trustee of a trustee's duty constitutes a breach of trust which affects the beneficiaries' equitable interest in the trust res and makes relief available that is equitable in nature, even where the beneficiary cannot demonstrate that she suffered, or will suffer, a monetary loss. *See* 20 Pa.C.S. §7781.[13]

---

[13] The remedies available under the UTA include:

> (1) Compelling the trustee to perform the trustee's duties.
> (2) Enjoining the trustee from committing a breach of trust.
> (3) Compelling the trustee to redress a breach of trust by paying money, restoring property or other means.
> (4) Ordering a trustee to file an account.
> (5) Taking any action authorized by Chapter 43 (relating to temporary fiduciaries).
> (6) (Reserved).
> (7) Removing the trustee as provided in section 7766 (relating to removal of trustee - UTC 706).
> (8) Reducing or denying compensation to the trustee.
> (9) Subject to section 7790.2 (relating to protection of person dealing with trustee - UTC 1012):
>     (i) voiding an act of the trustee;

(continued…)

Equitable remedies are designed to compel the trustee to redress the breach or otherwise to perform its duties as trustee. *See id.* §7781(b); *see also* RESTATEMENT (SECOND) OF TRUSTS §199; *cf.* RESTATEMENT (THIRD) OF TRUSTS §100 (relating to a trustee's liability for a breach of trust). Further, while Appellees are correct that the Attorney General has standing to object under its *parens patriae* authority, conferring standing to one entity does not automatically dispossess another person of her right to object to aspects of the Trust's administration. Thus, by raising objections to the Fourth Account, Appellant did not usurp the role of the Attorney General but asserted her own rights as a beneficiary.

We therefore hold that Appellant, as beneficiary under the Trust, had an interest which was harmed if the transactions of PNC as documented in the Fourth Account were improper as is alleged, and that her interest was substantial, direct, and immediate. It was substantial because any duties Appellant claims were breached were not owed to the general public, but to the beneficiaries. Furthermore, any harm to Appellant's interest in the trust res was caused by the allegedly improper transactions, and that harm ensued immediately upon the alleged breach of trust – it was not remote or speculative. In terms of the UTA, we therefore hold that Appellant is a beneficiary "affected" by PNC's alleged conduct. *See* 20 Pa.C.S. §7782(a) (making trustees liable to "the beneficiaries affected" by a breach of trust). *See generally id.* §7781, Uniform

---

(…continued)

       (ii) imposing a lien or a constructive trust on trust property; or
       (iii) tracing trust property wrongfully disposed of and recovering the property or its proceeds.
    (10) (Reserved).

20 Pa.C.S. §7781(b).

Law Comment ("Beneficiaries and cotrustees have standing to bring a petition to remedy a breach of trust.").

## B. Trustee compensation

In her objections, Appellant sought to challenge the income disbursed to PNC in the amount of approximately $2.3 million as reflected in the Fourth Account, as well as the retroactive commission requested by PNC in the amount of about $730,000, and the proposed change in fees going forward to conform with PNC's institutional fee schedule – which, as noted, sets compensation as a percentage of the trust account rather than trust income, and charges miscellaneous additional fees. *See supra* note 2.

Insofar as the $2.3 million in past fees is concerned, Appellant currently explains that her objection to this item relates to the 1969 letter sent by the University to PNC's predecessor, approving an increase from five to seven percent of gross income collected. *See supra* note 1; Brief for Appellant at 37. For the reasons explained, because the increased compensation necessarily affected the Trust principal, Appellant had standing to challenge it retroactively.

We also note that, under the UTA, where, as here, a settlor issues a written fee agreement, and the trustee later seeks to enlarge those fees, it can only do so with the court's approval, *see* 20 Pa.C.S. §7768(b), or by settlement agreement entered into by all beneficiaries, regardless of the size of their benefit. *See id.* §7710.1(b), (d)(4). Although the UTA was not in force when, in January 1969, PNC's predecessor enhanced its commission from five to seven percent of the Trust's gross income, we see no reason why a beneficiary who did not agree to the increase should be barred, on grounds of standing, from questioning it in a later judicial proceeding. *See* RESTATEMENT (SECOND) OF TRUSTS §242, comment *i* (indicating that if there are multiple beneficiaries, one beneficiary's authorization to an increase in the trustee's

compensation is not binding on the other beneficiaries); *cf.* 20 Pa.C.S. §7768, Uniform Law Comment (noting the UTA grants the trustee authorization to fix its own compensation without court approval, but that authorization is "subject to the right of a beneficiary to object to the compensation in a later judicial proceeding").[14]

The same applies with equal force to a present request, in a judicial setting, to a retroactive increase in compensation, as well as to increases which are proposed for the future. Whether or not such fees are ultimately deemed proper by the court, they will effectuate a transfer to PNC of monies that would otherwise remain within the Trust. Appellant's equitable interest in the entire Trust res is therefore sufficient to give her standing to challenge such fees. Additionally, as to these types of requests, the UTA applies and, as noted, it generally predicates such enhancements upon either judicial approval or private settlement agreed to by all beneficiaries.[15] We thus decline to adopt a test for standing whereby a retroactive or future enlargement in trustee compensation

---

[14] We do not foreclose that Appellant may be barred on some other basis besides standing from challenging the 1969 fee increase.

[15] PNC suggests that not all beneficiaries need to approve, citing a Uniform Law Comment stating, "The fact that the trustee and beneficiaries may resolve a matter nonjudicially does not mean that beneficiary approval is required." 20 Pa.C.S. §7701.1, Uniform Law Comment, *quoted in* Brief for PNC at 50.

This comment does not relate to beneficiary unanimity, but to whether beneficiary approval is required in the first instance, and it gives only one example of when such approval is not required: the resignation of a trustee pursuant to Section 705 of the UTC. Notably, that UTC provision is materially different from the counterpart portion of the UTA. *Compare* UTC §705 (providing for resignation upon 30 days' notice to various parties), *with* 20 Pa.C.S. §7765(a.1) (allowing for resignation with court approval, without court approval if authorized by the trust instrument, or pursuant to a nonjudicial settlement agreement described in Section 7710.1). More important, the comment cannot override the plain text of the statute, which by its terms applies only to situations where "all beneficiaries and trustees of a trust . . . enter into a binding nonjudicial agreement[.]" 20 Pa.C.S. §7710.1(b).

can only be challenged by a beneficiary who is able to demonstrate, preliminarily, that her benefit will be affected by the increase.

## C. Request for appointment of co-trustee

Appellant's request to have her daughter appointed as co-trustee is qualitatively different from her objections to the transactions memorialized in the Fourth Account and to PNC's various claims seeking additional compensation. Although the request may have arisen from Appellant's view that PNC committed breaches of trust while it remained the sole trustee, the "objection" is in reality a request for a remedy, and it cannot fairly be construed as directly or indirectly alleging an independent (past or future) breach. This distinction is material because the question as framed by Appellant and accepted by this Court for consideration relates only to alleged breaches of trust. This Court has emphasized that it "is limited to the issue as it was framed in the petition for allowance of appeal[.]" *Briggs v. Sw. Energy Prod. Co.*, ___ Pa. ___, ___, 224 A.3d 334, 350 (2020) (citing Pa.R.A.P. 1115(a)(3) ("Only the questions set forth in the petition [for allowance of appeal], or fairly comprised therein, will ordinarily be considered by the court in the event an appeal is allowed.")); *Commonwealth v. Metz*, 534 Pa. 341, 347 n.4, 633 A.2d 125, 127 n.4 (1993). Accordingly, the Superior Court's ruling on that facet of Appellant's objections is not before this Court.

## IV.

For the reasons given, the order of the Superior Court is reversed, but only insofar as it held that Appellant lacks standing to object to transactions contained in the Fourth Account and to PNC's request for additional compensation; as such, only those aspects of the orphans' court's order are reinstated. The case is remanded to the Superior Court, to be remanded to the orphans' court for further proceedings.

Chief Justice Baer and Justices Todd, Donohue, Dougherty, Wecht and Mundy join the opinion.

Justice Wecht files a concurring opinion.