J-A16021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ESTATE OF HELEN HARPER | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: ROBERT J. HARPER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2307 EDA 2021 |

Appeal from the Adjudication Entered October 18, 2021
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s):  0597-2015

BEFORE:   McLAUGHLIN, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED JULY 19, 2022**

Robert J. Harper (Appellant) appeals, *pro se*, from the October 18, 2021, adjudication[1] of the sur first and final account of the Estate of Helen B. Harper, deceased (Estate), filed by Appellee, Daniel B. Evans, Esquire (Administrator). Appellant and his brother, Charles B. Harper, III, are Decedent's children and beneficiaries of the Estate.  Appellant claims that his due process rights were violated because he was not provided with proper notice of the continuation of the audit of the Estate.  Appellant also asserts the Orphans' Court erred when it denied him the opportunity to bring his objections to the audit of the Estate.  Based on the following, we affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1]  **See** Pa.O.C.R. 2.9.

The Orphans' Court set forth the underlying facts and procedural history as follows:

Decedent Helen Harper died testate on November 11, 2017. Letters of Administration were granted to the Administrator on August 13, 2018. Decedent's Will dated December 15, 1998 left her entire estate to her Revocable Trust also dated December 15, 1998. Decedent's husband, Charles B. Harper, Jr., predeceased her. Under the circumstances that existed at Decedent's death, the only applicable directions for distribution are found in Article TWELVE of Decedent's Will, which directs that the remaining trust property be divided into equal shares for Decedent's children. Decedent's children are Appellee Charles B. Harper, III and [Appellant].

On June 24, 2021, the Administrator filed the First and Final Account. The Administrator averred that all parties in interest are living and of age and that they received notice of the filing of the Account, the Statement of Proposed Distribution, and the time and place of the Audit. The Administrator further averred that the inheritance tax due to the Commonwealth of Pennsylvania was paid and that there were no unpaid claims against the Estate with the exception of [Appellant]'s claim. The Administrator further averred that on November 25, 2015, Decedent was adjudicated as an incapacitated person by the Orphans' Court under Docket Number 597-2015. The Orphans' Court appointed [Jacquelyn] Goffney, Esquire[,] and [Appellant] as Decedent's Plenary Co-Guardians of her Person. The Orphans' Court appointed Jacquelyn Goffney, Esquire and Dana Breslin, Esquire as Decedent's Plenary Co-Guardians of her Estate.

In the First and Final Account, the Administrator addressed several claims made by [Appellant] and sought adjudication of those claims. [Appellant]'s claims are as follows: (1) whether [Appellant] is entitled to $385,000 from the Estate, which represents the 11 years at $35,000 that he took care of Decedent and his father and their respective properties; (2) whether [Appellant] is entitled to an unspecified interest in the proceeds of the sale of 608 North Swarthmore Avenue, Ridley Park, Pennsylvania; (3) whether the Administrator should be allowed to purchase from the Estate for a total value of $240.00 a set of six wooden chairs manufactured by J.B. Van Sciver Co. in the 1970s; (4) whether the payment of the Decedent's American Express

- 2 -

Card debt of $12,083.88 be considered to be a distribution to [Appellant] from his share of the Estate; (5) whether [Appellant] should be charged with the legal fees and costs of the ejectment action filed on February 26, 2020 that was brought against him by the Administrator when he failed to vacate Decedent's property on 9 W. DuPont Street, Ridley Park, Pennsylvania that was paid by the Estate for periods until [Appellant] vacated the property on or about October 7, 2020; (6) whether [Appellant] should be charged with rent for the 9 W. DuPont Street Property that was paid by the Estate for periods until [Appellant] vacated the property on or about October 7, 2020; and (7) whether [Appellant] should be charged with interest for the delay in the sale of 9 W. DuPont Street property.

On July 21, 2021, the following parties appeared before the Orphans' Court for the Audit of the First and Final Account: the Administrator, [Appellant], and Elizabeth Stefanide, Esquire, Counsel for Charles B. Harper, III. Ms. Stefanide stated that she received the Account; however, wanted more time to file a response. Ms. Stefanide further stated that the matter did not need to [be] put onto the next scheduled Audit List, but rather, could be presented to the assigned Hearing Officer/Master for review and recommendation to the Orphans' Court. The Orphans' Court concurred.

[Appellant] stated that he had objections to the Account; but had not yet filed his written objections with the Orphans' Court. Although an objector has only ten days to file written objections with the Orphans' Court under Delaware County Local Orphans' Court Rule 2.7(A), [Appellant] asked for additional time to file those written objections, specifically [60] days. Neither the Administrator nor Ms. Stefanide objected if the Orphans' Court gave [Appellant] an additional [30] days to file any written response to the Account. The Orphans' Court gave [Appellant 30] days to file his written objections to the Account. In addition, the Orphans' Court gave Ms. Stefanide [30] days to file any written response to the Account.

On September 8, 2021, [Appellant] filed his written objections to the Account, which was [48] days after the July 21, 2021 Audit. On September 15, 2021, [Appellant] appeared at the September 15, 2021 Audit even though this matter was not scheduled on the September 15th Audit List. Hearing Officer/Master William Halligan, Esquire presided at the

- 3 -

September 15, 2021 Audit List. [Appellant] stated that the Orphans' Court granted him a [30] day continuance and that this matter was to be heard on the September 15, 2021 Audit List. Hearing Officer/Master Halligan stated that there was no indication that the Orphans' Court continued this matter to the September 15th Audit List, but rather, it appeared that the Orphans' Court gave him [30] days to file his written objections to the Audit.

At the September 15th Audit List, [Appellant] admitted that he filed the written objections to the Audit beyond the [30] day time period. Hearing Officer/Master Halligan informed [Appellant] that the Orphans' Court would need to decide whether to accept his written objections filed beyond the [30]-day time period. Hearing Officer/Master Halligan explained again that this matter was not scheduled for the September 15, 2021 Audit List.

On October 18, 2021, the Orphans' Court entered the Adjudication of the First and Final Account in this matter. In addition, the Orphans' Court dismissed [Appellant]'s Objections as untimely because they were filed beyond the [30]-day period provided. The Objections were due on August 20, 2021 and were not filed until September 8, 2021, [19] days later.

As to [Appellant]'s claims, the Orphans' Court denied the claim for $385,000 for caring for Decedent, his father, and their properties, and as to his alleged interest in proceeds from the North Swarthmore Avenue Property. The Orphans' Court approved the Administrator's purchase of the six wooden chairs from the Estate. As to the Decedent's American Express Credit Card Debt, the Orphans' Court determined that while the Estate was contractually liable for the debt and could not refuse payment, it was a debt that [Appellant] should be primarily liable and not the [E]state because the charges appeared to be entirely for [Appellant]'s benefit, not Decedent's, and therefore, [Appellant]'s distribution should be reduced by $12,083.88 to pay the outstanding debt.

As to the legal fees and costs of the ejectment action filed against [Appellant] when he failed to vacate the 9 W. DuPont Street Property, the Orphans' Court ordered that [Appellant] shall pay $2,303 to the Estate for said fees and costs. As to the charge of interest for the delay of the sale of the 9 W. DuPont Street Property caused by [Appellant]'s failure to vacate timely, the Orphans' Court agreed with the Administrator that the short term

federal interest rate was the appropriate measure of damages and ordered that $4,064.66 be withheld from distribution to [Appellant] and paid back to the Estate. As to these payments made to the Estate, [Appellant] is a 1/2 beneficiary and will receive 1/2 of anything he pays to the Estate.

In the Adjudication, the Orphans' Court ordered that

[i]n conformance with the Statement of Proposed Distribution and in conformance with such distribution as may have heretofore properly been made and in conformance with the adjustments to the distributions to [Appellant] as set forth in this adjudication there is awarded unto: Charles B. Harper, III — one-half (1/2) the balance of principal and income and to [Appellant] — one-half (1/2) the balance of principal and income.

Orphans' Ct. Op., 2/1/22, at 1-6 (record citations omitted). This timely *pro se* appeal followed.[2]

Appellant raises the following two issues on appeal:

1. Is [Appellant] entitled to due process of proper notice of the continuation of the audit of the [E]state[?]

2. Did the trial court err when, based on error of law, [A]ppellant was denied the opportunity to bring his objections to the audit of the [E]state[?]

_____

[2] On November 15, 2021, the Orphans' Court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely complied with the court's order on December 3, 2021. The court issued a Pa.R.A.P. 1925(a) opinion on February 1, 2022.

Notably, Appellant's concise statement contained nine issues. *See* Statement of Matters Complained of on Appeal, 12/3/21, at 1-3 (unpaginated). But on appeal, he has abandoned eight of those claims. Accordingly, we need not address those issues. *See Commonwealth v. Briggs*, 12 A.3d 291, 310 n.19 (Pa. 2011 (declining to address claim raised with trial court in concise statement but subsequently abandoned in brief).

Appellant's Brief at 3. Based on the nature of his claims, we will address them together.

Appellant first contends the Orphans' Court erred by failing to provide proper notice of the continued audit of the Estate as required by Orphans' Court Rule 2.5(e). *See* Appellant's Brief at 6. He states that when the first and final audit and accounting were called in July 2021, he requested a 60-day continuance but was granted a 30-day continuance by the court. *See id.* He alleges that after he filed his objections on September 8, 2021, he never received notice by the court of the next audit, which resulted in a due process violation. *See id.* at 6-9. Appellant asserts:

> In requesting a continuance, [he] only had knowledge, at that time, of one action, the audit and **had no knowledge of being able to request a continuance of filing objections. Nowhere in the record does [Appellant] request a continuance for filing objections**. This was an element of confusion. [He] was referring to the audit and the court and Ms. Stefanide were referring to the objections. Ms. Stefanide speaks of a response . . . but [he] received none. Delaware County calls an audit every month, except August. The next audit was September 15, 202[1,] which [he] appeared at but learned that the Estate . . . was not on the list. . . .
>
> After [A]ppellant requested a continuance of what he thought was the Audit and without receiving proper notice by the court [A]pellant filed his objections on September 8, 2021 before the next audit date of September 15, 2021. Had the court issued proper notice there would have been no confusion and [A]ppellant's [d]ue [p]rocess rights would have been preserved and protected.

*Id.* at 9-10 (emphasis added).

In Appellant's second issue, he resumes his prior claim that the Orphans' Court erred by imposing judgment based upon the error of denying him the opportunity to be heard. *See* Appellant's Brief at 10. He states, "Without being able to voice his objections and the [Orphans' C]ourt adjudicating based upon an error of law of failure to act and provide proper notice[,] the accountant[']s pleadings were accepted by the court. The deficiencies of the accountant's actions were never fully revealed to the court." *Id.* at 10-11. Appellant concludes the court "violated" his due process rights "in confirming any [and] all of the accountant[']s claims after committing [an] error of law." *Id.* at 11.

> Our standard of review of the findings of an [O]rphans' [C]ourt is deferential.
>
> > When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion.
> >
> > However, we are not constrained to give the same deference to any resulting legal conclusions.
> >
> > [T]he Orphans' [C]ourt decision will not be reversed unless there has been an abuse of discretion or a fundamental error in applying the correct principles of law.

*In re Estate of Whitley*, 50 A.3d 203, 206-07 (Pa. Super. 2012) (citations and quotation marks omitted). We note that "[a]n abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides

or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused." ***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*) (citation omitted). "Our scope of review is also limited: we determine only whether the court's findings are based on competent and credible evidence of record." ***In re Estate of Karschner***, 919 A.2d 252, 256 (Pa. Super. 2007) (citation omitted).

Rule 2.5 addresses an accountant's duty to provide notice of filing an account, in pertinent part, as follows:

**Rule 2.5. Notice of Account Filing**

(a) No Account shall be confirmed or statement of proposed distribution approved unless the accountant has given written notice of the filing of the Account as provided in subparagraph (d) of this Rule to the following, as applicable:

* * *

(3) any other individual or entity known to the accountant to have or claim an interest in the estate . . . as a beneficiary . . .; [and]

* * *

(d) **Written notice**, as provided in subparagraph (a) of this Rule, **shall be mailed at least 20 days prior to the audit** in those counties having a separate Orphans' Court Division or 20 days prior to the date by which objections must be filed in all other counties, and the written notice shall state the date of the audit or the date by which objections must be filed, and the time and place of the audit, if one is to be held, to the extent then known. A party residing outside of the United States shall have 60 days, rather than 20 days, within which to file an objection. If an audit is to be held and the date, time, and place of the audit is not known at the time the notice is mailed, the notice shall state that the date, time, and place of the audit will be provided upon

request. A copy of the Account, petition for adjudication/statement of proposed distribution, and any legal paper filed therewith shall be sent with the notice, unless the recipient of the notice is a trust beneficiary who is not a "qualified beneficiary" as defined in 20 Pa.C.S. § 7703, or unless the court orders otherwise in a particular matter.

(e) **If the audit of an Account is continued or the date for filing written objections is extended, additional notice shall be mailed at least 20 days prior to the date of the continued audit or the new date for filing written objections to all of those who initially received notice of the Account's filing**. The additional notice shall state the date of the continued audit or the date by which objections must be filed, and the time and place of the continued audit, if one is to be held, to the extent then known. If the time and place of the continued audit is not known at the time the additional notice is mailed, the additional notice shall state that the time and place of the continued audit will be provided upon request.

Pa.O.C.R. 2.5(a)(3), (d), (e) (emphasis added). As for objections, Pa.O.C.R.

2.7 provides, in relevant part:

(a) Objections to an Account and/or a petition for adjudication/statement of proposed distribution shall be filed with the clerk on or before the time and date of the audit in those counties holding an audit, and by a specified date in all other counties, with a copy served on the accountant or the accountant's counsel, if represented, and to each interested party and claimant who received the notice pursuant to Rule 2.5, to the extent known, pursuant to Rule 4.3.

(b) Objections shall be in writing . . . .

* * *

(d) The court may extend the time for filing objections.

Pa.O.C. Rule 2.7(a), (b), (d).

Moreover, because Appellant complains that he was denied proper notice, we note the following. "Lack of notice and an opportunity to be heard

- 9 -

constitutes a violation of due process of law and results in an invalid judgment." **Shay v. Flight C Helicopter Servs.**, 822 A.2d 1, 11 (Pa. Super. 2003). **See also In re Galli's Estate**, 17 A.2d 899, 903 (Pa. 1941) ("[N]otice was indispensably necessary to give jurisdiction, and, without such notice and an opportunity to appellant to be heard, the decrees of the court were absolutely void.") (citation omitted).

A review of the record reveals that at the July 21, 2021, audit list, the following discussion took place between the parties and the Orphans' Court:

THE COURT: Okay. And are there objections to the accounting?

[MS. STEFANIDE]: Your Honor, I was just letting [Administrator] know that I have received the accounting, I have prepared a response to the accounting, I needed a little more time to file that response. I do not know that we see major issues from our perspective, but we will get something filed of record.

THE COURT: Do you want to come back on another audit list or do you want me to send it on?

[MS. STEFANIDE]: I think we should send it on Your Honor, and I would get that filed and sent to [Administrator].

THE COURT: And you will notify all the parties?

[MS. STEFANIDE]: Yes, Your Honor.

THE COURT: Okay.

[MS. STEFANIDE]: Yes, Your Honor.

[ADMINISTRATOR]: What do you mean – I am sorry, Your Honor, what do you mean by send it on?

THE COURT: So it goes to the Master next and they review it.

[ADMINISTRATOR]: Oh, okay.

- 10 -

* * *

[ADMINISTRATOR]:  I am sure [Appellant] has objections however.

[APPELLANT]:  Your Honor, I am pro se.

THE COURT:  So the Master will hear those objections, okay?

[ADMINISTRATOR]:  Okay, but they should be filed of record –

THE COURT:  Correct.

[ADMINISTRATOR]:  — within ten days I believe the local board says.

THE COURT:  Correct, all right.

[APPELLANT]:  Your Honor?

THE COURT:  Yes [Appellant]?

[APPELLANT]:  I am a pro se litigant.  I am not experienced in estate litigation.  I request a continuance to prepare a response.

THE COURT:  So you need more than ten days?

[APPELLANT]:  I do.

THE COURT:  So Ms. [Stefanide] or [Administrator,] do either of you have a problem by giving [Appellant] more than ten days? How much more time do you need?

[APPELLANT]:  I would like 60, but I will take 30.

[ADMINISTRATOR]:  I will not object to 30 days, Your Honor.

[MS. STEFANIDE]:  I will not either, Your Honor.

THE COURT:  Okay.

N.T., 7/21/21, at 3-6.

Thereafter, at the September 15, 2021, Audit List, the following took place between Hearing Officer/Master Halligan and Appellant:

[Halligan]: Well, what gave you reason to believe your case would . . . come up, [Appellant], please. What – why did you think your matter was being heard today? It's not on any list that we have.

[Appellant]: I asked for a continuance. The judge granted a continuance. The next audit date was September 15th.

[Halligan]: Well . . . I wasn't there. I don't know what happened. There's no indication that the judge continued your case to September 15th. She may have continued it generally. It was my impression that it was continued for the purpose of you filing objections from within 30 days. That's -- that was what I was told.

*      *      *

[Appellant]: I filed my objections here, Your Honor, . . . but they were beyond 30 days.

[Halligan]: Well, that's going to be a matter for the judge to see whether she accepts those objections or not since they were not timely filed. . . .

N.T., 9/15/21, at 3-4.

In addressing Appellant's argument, the orphans' court opined:

The Orphans' Court never continued the July 21, 2021 Audit in this matter to a subsequent Audit List. As is clearly reflected in the Notes of Testimony from the July 21st Audit List, the Orphans' Court gave [Appellant] additional time to file his **written** [o]bjections to the [a]ccounting. Under Del.Co.O.C.Rule 2.7A(3), "[o]bjections may be made orally at the call of the Audit List, in which case the objections **shall** . . . thereafter be filed in writing within 10 days with notice as provided in Pa.O.C. Rule 2.7(a)." (emphasis added). The term "shall" is a word of command and one which must be given a compulsory meaning: as denoting obligation. Black's Law Dictionary (Revised 4th ed. 1968).

*      *      *

- 12 -

[At the] September 15, 2021 Audit List, [Appellant] appeared even though this matter was not on the Audit List. Hearing Officer/Master William Halligan, Esquire informed [Appellant] that this matter was not on the September 15, 2021 Audit List and that there was no indication that the Orphans' Court had continued this matter from the July 21, 2021 Audit List to the September 15, 2021 Audit List. Hearing Officer Halligan stated that it was his impression that the Orphans' Court provided [Appellant 30] days to file his written objections to the Account. [Appellant] admitted that he filed his written [o]bjections beyond the [30] day time period. Hearing Officer/Master Halligan stated that the Orphans' Court would need to decide whether his written [o]bjections were timely filed.

The [r]ecord is clear that the Orphans' Court gave [30] days to [Appellant], instead of the ten days as required by the Delaware County Local Orphans' Court Rules, to file his written [o]bjections. At no point did the Orphans' Court ever state that it continued the entire matter to the next scheduled Audit List on September 15, 2021. Based upon the extended date, [Appellant] had to file his written [o]bjections by August 20, 2021. [Appellant] did not file his written [o]bjections until September 8, 2021, approximately [19] days after the extended date. The Orphans' Court properly dismissed [Appellant]'s written [o]bjections as untimely.

Therefore, [Appellant]'s allegation that the Orphans' Court did not provide additional notice of the continued audit and clarify his [c]onstitutional [r]ight to [d]ue [p]rocess as provided under 231 Pa. Code. Rule 2.5(e) [n]otice of [a]ccount [f]iling is without merit because the Orphans' Court never continued the matter to a subsequent Audit List.

Orphans' Ct. Op. at 9, 11-12 (record citations omitted).

We agree with the analysis provided by the Orphans' Court. Appellant's arguments — that he had no knowledge of being able to request a continuance for filing objections, that the record does not reveal him requesting a continuance for filing objections, and that there was some confusion because he was actually requesting a continuance to the audit — are belied by the

record. As noted by the court, at the July 2021 Audit List, the parties and the court were discussing the ten-day time period for filing objections when Appellant asked for a continuance to prepare a response. *See* N.T., 7/21/21, at 5. The court inquired if Appellant would need more than ten days, to which Appellant replied in the affirmative, requesting both a 30-day and 60-day continuance. *See id.* at 5-6. The court provided him with a 30-day extension. *Id.* at 6. Subsequently, at the September 2021 Audit List, Appellant acknowledged that he filed his objections in an untimely manner. *See* N.T., 9/15/21, at 4. We note that although Appellant was *pro se* at the time of these proceedings, his *pro se* status did not relieve him of his obligation to follow the rules. *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 213 n.11 (Pa. Super. 2008); *Elliot-Greenleaf, P.C. v. Rothstein*, 255 A.3d 539, 542 (Pa. Super. 2021) ("As our [S]upreme [C]ourt has explained, any layperson choosing to represent [himself] in a legal proceeding must, to some reasonable extent, assume the risk that [his] lack of expertise and legal training will prove [his] undoing.") (citation omitted).

While Appellant was provided with an extension from ten days to 30 days to file objections, the record clearly establishes that a continuance of the audit was neither granted, nor even mentioned, at the July 2021 Audit List. Therefore, Appellant's due process rights were not violated for failure to give proper notice of the continuance as set forth in Rule 2.5(e). Moreover, because Appellant did not file his objections until 19 days after the extension

date provided by the court pursuant to Rule 2.7, we discern no error on the part of the Orphans' Court in dismissing his written objections as untimely filed.

Adjudication affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/19/2022